# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39223**

————————————

**UNITED STATES**
*Appellee*

v.

**Matthew C. HARRINGTON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 September 2018

————————————

*Military Judge:* Joseph S. Imburgia.

*Approved sentence:* Dishonorable discharge, forfeiture of $1,066.00 pay per month until completion of appellate review, reduction to E-1, and a reprimand. Sentence adjudged 20 November 2016 by GCM convened at Nellis Air Force Base, Nevada.

*For Appellant:* Major Patricia Encarnación Miranda, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, JOHNSON and DENNIS, *Appellate Military Judges.*

Chief Judge MAYBERRY delivered the opinion of the court, in which Judge DENNIS joined. Senior Judge JOHNSON filed a separate dissenting opinion.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MAYBERRY, Chief Judge:

A general court-martial composed of officer and enlisted members found Appellant guilty, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. The court-martial sentenced Appellant to a dishonorable discharge, hard labor without confinement for three months, total forfeiture of pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority deferred the forfeitures until he took action on the court-martial and approved only the dishonorable discharge, forfeiture of $1,066.00 pay per month until completion of appellate review, reduction to E-1, and a reprimand.

On appeal, Appellant raises a single issue: whether the military judge abused his discretion by applying Military Rule of Evidence (Mil. R. Evid.) 412 to exclude evidence the Defense sought to admit. We find the military judge abused his discretion by excluding the evidence, and we set aside the findings and sentence.[1]

## I. BACKGROUND

In January 2016, Appellant and Senior Airman (SrA) FC were co-workers stationed at Creech Air Force Base (AFB), Nevada. On 30 January 2016, SrA FC and her then-boyfriend agreed to end their relationship. Later that day, SrA FC attended a party at the off-base residence of another co-worker, Staff Sergeant (SSgt) KW. Appellant and several other individuals, mostly Airmen, also attended the party. SrA FC's recently-estranged boyfriend and Appellant's wife did not attend. SrA FC and Appellant had no prior sexual relationship.

Appellant, SrA FC, and several others played adult party games. Of note, one game was an "adult" or "drinking" version of Jenga that involved removing individual blocks from a tower of blocks. In the version of the game they played, each block had an instruction printed on it for the participant to perform, often of a titillating nature—for example, removing an article of clothing or electing to take a "body shot" of alcohol from a location on another player's body. In the course of the game, SrA FC removed her pants, and Appellant elected to take "body shots" from SrA FC's mouth, from her cleavage, and from between her buttocks. SrA FC permitted Appellant to do so.

---

[1] All pretrial motions regarding Appellant's request to introduce evidence under Military Rule of Evidence 412 were sealed as were the transcripts of the multiple hearings involving the motions. As a result of our finding the military judge abused his discretion in excluding this evidence, the opinion contains discussion of sealed material necessary for our analysis.

The partygoers consumed alcohol before and during the games, and SrA FC became highly intoxicated. SrA FC had to leave the games at certain points because she felt sick, and she vomited at least three times over the course of the evening. Eventually, SSgt KW and another partygoer, SSgt RD, put SrA FC to bed in an upstairs bedroom as the party continued downstairs. According to SSgt RD, the party began to "wrap up" a short time thereafter. Later, as the party was ending, SSgt RD noticed Appellant lying on the bed next to SrA FC. SSgt RD described SrA FC as appearing "intoxicated [and] falling asleep" at that point, but not "completely asleep." SSgt RD briefly made eye contact with Appellant, who was awake but also appeared "drunk" and "about to fall asleep." SSgt RD "didn't think much of it" when he saw Appellant on the bed.

SrA FC testified that when she awoke, her pants were lowered to around her thighs. Appellant was lying behind her with his penis inside her and his hand on her hip. SrA FC initially "froze." As she lay immobile, Appellant "thrusted a few times" and kissed her on the shoulder. When SrA FC moved slightly, Appellant withdrew and moved away from her on the bed. When everything was "still," SrA FC arose, pulled her pants up, and looked back at Appellant, who was lying on the bed with his eyes closed. SrA FC went downstairs with her phone and sent a text message to a friend. Shortly thereafter, Appellant came downstairs and said to SrA FC, "Man, last night was crazy." SrA FC went out to her car to speak with her friend, who she informed of the sexual assault. SrA FC then went to a hospital and underwent a sexual assault forensic examination later that day. Subsequent analysis of evidence collected during the exam disclosed the presence of semen on vaginal, cervical, rectal, and external genital swabs. DNA testing of the cervical and rectal swabs matched Appellant's DNA profile.

Appellant was charged with a single specification of sexual assault by causing bodily harm. Before trial, the Defense filed a motion pursuant to Mil. R. Evid. 412(c) regarding its intent to offer evidence of, *inter alia*, SrA FC's behavior during the Jenga game. Trial defense counsel contended such evidence was admissible under Mil. R. Evid. 412(b)(1)(B) as evidence of sexual behavior by the alleged victim which Appellant offered to prove consent, as well as under Mil. R. Evid. 412(b)(1)(C) as evidence the exclusion of which would violate Appellant's constitutional rights. Specifically, the trial defense counsel argued:

- The intimate nature of the Jenga game activities between Appellant and SrA FC "go[es] to the likelihood that she would be willing to consent to further sexual behavior later on in the evening."
- For similar reasons, the evidence "goes to show a mistake of fact as to consent," which would be relevant under both the (b)(1)(B) and (C) exceptions to Mil. R. Evid. 412, and exclusion of the evidence mischaracterizes the facts and circumstances, bolstering the conclusion there may

be no reasonable mistake of fact, thereby depriving Appellant the ability to put on his theory of the case.

- The evidence is relevant as to SrA FC's credibility regarding her expected testimony that she did not consent. Specifically, the evidence available established that neither SrA FC nor Appellant remembered what happened, and the defense would be prejudiced by not being able to argue that based on the facts and circumstances, her failure to remember is not independent evidence that she did not consent.

The Government and SrA FC (through her Special Victims' Counsel) opposed the motion. After receiving evidence and argument in a closed hearing, the military judge denied the motion in a written ruling. The military judge permitted evidence that SrA FC and other participants played party games that involved drinking alcohol, but did not permit references to anyone's specific individual behavior during the games.

The Defense sought reconsideration of this ruling multiple times as the trial progressed. The Defense requested reconsideration after a prosecution expert witness testified that the number of sperm cells found inside SrA FC was indicative of a full ejaculation; after a court member submitted a question as to whether Appellant and SrA FC had engaged in consensual sexual contact prior to the alleged offense; and after another court member submitted a question regarding the rules for "drunk Jenga." The military judge denied each of these requests to modify his ruling.

The Defense also requested reconsideration after SrA FC testified regarding Appellant's "last night was crazy" remark. Trial defense counsel argued the Government had opened the door to the excluded evidence. Trial defense counsel contended that, without further information of the facts and circumstances of what happened the night before, the members might interpret the comment as some sort of admission to sexual intercourse when instead Appellant may have been referring to the risqué activities associated with the Jenga game. Based on the judge's ruling, at the time SrA FC testified, the members knew only that the party included drinking games, not that the games also included nudity and touching between Appellant and SrA FC. The military judge agreed that trial counsel had opened the door to the Mil. R. Evid. 412 evidence, but declined to change his ruling excluding the evidence. Instead, he gave the following instruction prior to the cross-examination of SrA FC:

> You may or may not have heard [SrA FC] testify about a statement that [Appellant] may or may not have made to her at [SSgt KW's] house during the charged timeframe. You are to completely disregard any and all statements you may have heard in that regard. This includes any and all statements [SrA FC] may or may not have testified that she heard [Appellant] make at

[SSgt KW's] house on 30 and 31 January 2016. You may not consider them for any purpose or discuss them amongst yourselves. You may not consider the contents of the statements, nor may you consider whether a statement was, in fact, made. I cannot give you any more specifics on this matter, and you may not make any inferences about why this instruction is being given. To the extent that any other statements of the accused came into evidence through other witnesses, you may consider them along with the other evidence in this case. In short, anything said by [SrA FC] during her testimony about statements by [Appellant] at [SSgt KW's] house cannot be considered by you as evidence in this case.

Only after giving this instruction did the military judge realize that the Sexual Assault Nurse Examiner (SANE), a witness for the Government, had also testified as to the "crazy night" statement SrA FC attributed to Appellant and that a page from the SANE report offered by the defense also contained the same language. The military judge ruled that based on his prior rulings, he would preclude the Government from arguing "any inference from that statement being made, to the extent that it was made by the accused" and he would further instruct the members that "any reference that may or may not have been made by [Appellant] to [SrA FC] that it was a 'crazy night' was not in reference to the sexual act that may or may not have occurred between them."

During his instructions on findings, the military judge repeated the instruction above to disregard the testimony of SrA FC and also included an instruction regarding the testimony of the SANE:

Additionally, you may or may not have heard testimony from Ms. [TR] that, while conducting her forensic examination of [SrA FC], [SrA FC] told her that, after the alleged incident, the accused told her that the night of 30 and 31 January 2016 was a "crazy night." That statement is also summarized in Defense Exhibit Alpha, a summary which Ms. [TR] made. To the extent you believe the accused made that statement to [SrA FC] and to the extent you believe that [SrA FC] subsequently and accurately relayed that statement to Ms. [TR], and that Ms. [TR] accurately summarized that statement, you shall not infer that the statement "it was a crazy night" was in any way referring to the sexual act alleged, and you shall not infer that it was referring in any way to any consensual or nonconsensual sexual contact with [SrA FC].

## II. DISCUSSION

**A. Law**

"We review a military judge's decision to admit or exclude evidence for an abuse of discretion." *United States v. Erickson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (citation omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts was clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). The application of Mil. R. Evid. 412 to proffered evidence is a legal issue that appellate courts review de novo. *United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010).

Mil. R. Evid. 412 provides that in any proceeding involving an alleged sexual offense, evidence offered to prove the alleged victim engaged in other sexual behavior or has a sexual predisposition is generally inadmissible, with three limited exceptions, the second and third of which are pertinent to this case. The burden is on the defense to overcome the general rule of exclusion by demonstrating an exception applies. *United States v. Carter*, 47 M.J. 395, 396 (C.A.A.F. 1998).

The second exception under Mil. R. Evid. 412 includes "evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent . . . ." Mil. R. Evid. 412(b)(1)(B). Evidence that fits this exception may nevertheless be excluded if the probative value of the evidence is outweighed by the danger of unfair prejudice to the alleged victim's privacy. Mil. R. Evid. 412(c)(3). In addition, like other evidence, evidence otherwise admissible under Mil. R. Evid. 412(b)(1)(B) may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." Mil. R. Evid. 403. Where a military judge conducts a proper balancing test under Mil. R. Evid. 403, an appellate court will not overturn the ruling absent a clear abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)).

The third exception under Mil. R. Evid. 412 provides that the evidence is admissible if its exclusion "would violate the constitutional rights of the accused." Mil. R. Evid. 412(b)(1)(C). Generally, evidence of other sexual behavior by an alleged victim is constitutionally required and "must be admitted within the ambit of [Mil. R. Evid.] 412(b)(1)(C) when [it] is relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice."

*United States v. Ellerbrock*, 70 M.J. 314, 318 (C.A.A.F. 2011) (citation omitted). Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to determining the case more probable or less probable than it would be without the evidence. Mil. R. Evid. 401. Materiality "is a multi-factored test looking at the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which the issue is in dispute; and the nature of the other evidence in the case pertaining to th[at] issue." *Ellerbrock*, 70 M.J. at 318 (alteration in original) (citations omitted) (internal quotation marks omitted). The dangers of unfair prejudice to be considered "include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id*. (citation omitted) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

## B. Analysis

Appellant contends the military judge abused his discretion by excluding evidence the Defense sought to admit under two exceptions to Mil. R. Evid. 412's general rule of exclusion. We conclude that the military judge's reasoning was flawed and his decision to exclude the evidence was an abuse of discretion. We further find the error was not harmless beyond a reasonable doubt.

### 1. "Sexual Behavior"

The military judge began his analysis by finding the evidence of SrA FC's actions during the Jenga game qualified as evidence of "sexual behavior" or "sexual predisposition" for purposes of Mil. R. Evid. 412(a). Because the behavior in question may have had a "sexual connotation for the factfinder," we agree. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), App. 22, at A22–42 (explaining that Mil. R. Evid. 412(a) is intended to "exclude evidence that does not directly refer to sexual activities or thoughts but that the accused believes may have a sexual connotation for the factfinder"). Therefore, the evidence was inadmissible unless an exception applied.

### 2. Mil. R. Evid. 412(b)(1)(B): Behavior by the Alleged Victim with Respect to the Accused Offered to Prove Consent

The military judge then found this evidence did not meet the exception for specific instances of sexual behavior by the alleged victim with respect to Appellant offered to prove consent under Mil. R. Evid. 412(b)(1)(B). He reasoned that SrA FC was "merely playing a party game similar to truth or dare" according to its rules, and her actions "were not sexual advances towards [Appellant]." We find this analysis flawed. To meet criteria for admissibility under Mil. R. Evid. 412(b)(1)(B), evidence of the alleged victim's behavior must be "with respect to" the accused and offered to prove consent or mistake of fact as to consent. *See United States v. Gordon*, 2007 CCA LEXIS 415 (N.M. Ct. Crim.

App. 27 Sep. 2007), *rev. denied,* 2008 CAAF LEXIS 939 (C.A.A.F. 12 Jun. 2008). We find the behavior in question was sufficiently "with respect to" Appellant to meet the exception. True, SrA FC was playing a game according to its rules; however, it was a sexually provocative game that SrA FC voluntarily participated in generally, but she specifically permitted Appellant to drink alcohol from sexually suggestive parts of her body. This was sexual behavior between SrA FC and Appellant. For the exception to be satisfied there is no requirement that evidence offered under Mil. R. Evid. 412(b)(1)(B) must amount to a "sexual advance" by an alleged victim. The Defense offered this evidence in order to prove consent or mistake of fact as to consent. The theory of the case presented by trial defense counsel was that SrA FC and Appellant "had consensual sex while they were both blacked out" at some point between the end of the party and when SrA FC awoke the following morning, and that SrA FC's testimony regarding Appellant penetrating her as she awoke reflected a faulty reconstructed memory. Accordingly, we find the offered evidence met the Mil. R. Evid. 412(b)(1)(B) exception.

The military judge further found evidence of SrA FC's behavior during the Jenga game "not logically relevant to whether she consented to vaginal intercourse with [Appellant] later that evening." We agree with the military judge that evidence meeting an exception under Mil. R. Evid. 412(b) must also be relevant to be admissible. *See* Mil. R. Evid. 402(b) ("Irrelevant evidence is not admissible."); 412(c)(3) (stating evidence meeting a Mil. R. Evid. 412(b) exception may be admissible if, *inter alia*, it is "relevant" for such a purpose). Yet relevance is a "low threshold." *Roberts*, 69 M.J. at 27. Evidence is relevant if it has *any* tendency to make the existence of a fact more probable or less probable than it would be without the evidence. Mil. R. Evid. 401(a). We conclude SrA FC's willingness to remove her pants and in particular to permit Appellant to drink alcohol from her mouth, breasts, and buttocks has *some* tendency to lead the court members to find she may also have consented to engage in sexual intercourse with Appellant later that night, or that Appellant may have believed she would consent. Although we agree with the military judge that these prior activities do not *by themselves* constitute consent to sexual intercourse, *see* Article 120(g)(8)(A), UCMJ, 10 U.S.C. § 920(g)(8)(A), that is not the test for relevance. It is enough that the evidence had a tendency to support the Defense's case.

The military judge's analysis did not end there. Assuming *arguendo* the evidence was relevant to whether SrA FC consented to vaginal intercourse, the military judge found its probative value was "substantially outweighed by the

8

danger of unfair prejudice to the trial process."[2] *See* Mil. R. Evid. 403. The military judge explained the risk was "the old [unfair] argument" that Mil. R. Evid. 412 was designed to prevent, that "simply because of [SrA FC's] actions during the Jenga game, she must have wanted to engage in sexual acts with [Appellant] that night."

We find the military judge erred in his application of Mil. R. Evid. 403. The military judge failed to fully appreciate the relevance and materiality of this evidence to the Defense's case. Though he assumed relevance on the issue of consent in weighing the probative value, his analysis omitted any consideration of the probative value that Appellant could have had the mistaken belief that she consented. The excluded evidence of the sexual behavior between SrA FC and Appellant prior to the sexual assault precluded the Defense from establishing evidence that SrA FC may have consented to sexual intercourse, and that Appellant may have reasonably believed SrA FC did so.

The events taking place after the military judge's ruling further highlight the error. The court members' specific questions about whether there were any prior sexual interactions between Appellant and SrA FC and about what happened during the Jenga game underscore the significance of the excluded evidence. Their questions were not surprising given how interwoven the Jenga game was into the evening's events. The efforts to resolve SrA FC's "crazy night" comment serve as another example of the potential significance of this evidence. Yet, when both parties indicated they would potentially recall witnesses to provide previously prohibited facts and circumstances to provide context to the "crazy night" statement, the military judge stood by his original determination as to the limited probative value of the evidence and supplemented his Mil. R. Evid. 403 analysis to say ". . . just to go into this issue that the court has already ruled has marginal benefit to either prove consent, or to prove anything else for that matter other than sexual predisposition or sexual behavior. . . . it would be time consuming, and also a waste of time, under the analysis of 403, for that to happen on a matter that the court has already ruled has limited probative value."

Without this evidence, the Defense was left with little more than speculation based on generalized expert testimony regarding memory and the effects

---

[2] Significantly, the military judge did not base his prejudice analysis on "the danger of unfair prejudice to the alleged victim's privacy." Mil. R. Evid. 412(c)(3). In part, this appears to be because the military judge was reluctant to invoke the victim's privacy interest as a countervailing interest to be weighed in light of *United States v. Gaddis*, 70 M.J. 248, 256 (C.A.A.F. 2011), although *Gaddis* dealt specifically with the "constitutionally required exception" of Mil. R. Evid. 412(b)(1)(C) rather than Mil. R. Evid. 412(b)(1)(B). Instead, the military judge focused on the prejudice to the truth-seeking purpose of the trial process itself.

of alcohol with which to counter SrA FC's testimony at trial that Appellant penetrated her while she was asleep. Again, SrA FC's behavior during the game did not need to independently prove consent to sexual intercourse in order to be relevant, material, and important to the Defense's case. Moreover, the absence of the evidence forced the Defense to offer only an incomplete picture of the events leading up to the charged sexual assault.

Accordingly, we find the military judge's conclusion that the risk of unfair prejudice "substantially outweighed" the probative value of this otherwise admissible evidence to be a clear abuse of discretion. *See Ediger*, 68 M.J. at 248.

### 3. Mil. R. Evid. 412(b)(1)(C): Constitutionally Required Evidence

Our analysis of the application of the "constitutionally required" exception under Mil. R. Evid. 412(b)(1)(C) follows a similar track. Generally, evidence of the alleged victim's prior sexual behavior or predisposition must be admitted when it "is relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318 (citation omitted). For the reasons stated above, we find the evidence was relevant to the questions of whether SrA FC consented to sexual intercourse with Appellant or whether Appellant may have reasonably believed she consented. Similarly, we find the evidence was material. In this case, the evidence was offered on the critical disputed issue of whether SrA FC consented to sexual intercourse with Appellant, and no other evidence fulfilled the same purpose for the Defense.

With respect to the "dangers of unfair prejudice," we acknowledge the standard for admissibility articulated in *Ellerbrock* is more demanding than that imposed by Mil. R. Evid. 403. Specifically, the probative value must outweigh the dangers of unfair prejudice, rather than simply not be "substantially outweighed" by such dangers as under Mil. R. Evid. 403. To be clear, we do not take lightly the purpose Mil. R. Evid. 412 serves. We agree with the military judge's assessment that it would have been improper for the Defense to argue that "simply because of [SrA FC's] actions during the Jenga game, she must have wanted to engage in sexual acts with [Appellant] that night." We disagree with his failure to consider the probative value of SrA FC's actions on whether Appellant could have reasonably, but mistakenly, believed that she consented. In conducting such an analysis, the military judge could have curbed the countervailing Mil. R. Evid. 412 concern that the court members would misapply this evidence with an appropriate limiting instruction.

Nevertheless, for the reasons articulated above, we find the probative value of the evidence outweighed such dangers. The materiality of the evidence to the Defense's case coupled with the availability of limiting instructions to guide the court members' deliberations required the admission of the evidence in this

case. Accordingly, we conclude the evidence of SrA FC's behavior during the Jenga game was admissible under Mil. R. Evid. 412(b)(1)(C) exceptions, and the military judge abused his discretion by excluding it.

### 4. Harmless Error Analysis

Having concluded the military judge erred in excluding the evidence, we must test that error for prejudice. Where the proffered evidence was constitutionally required and admissible under Mil. R. Evid. 412(b)(1)(C), we test for prejudice by determining whether the error was harmless beyond a reasonable doubt. *Ellerbrock*, 70 M.J. at 318. In other words, we must assess whether there is a "reasonable possibility" the error "might have contributed to the conviction." *Id*. We find there was such a possibility.

The Government's case, although solid, was not overwhelming. The Government introduced compelling evidence of sexual intercourse, but its proof that SrA FC did not consent hinged primarily on her testimony. The Government introduced no incriminating statements by Appellant, other than SrA FC's testimony regarding Appellant's arguably prejudicial "crazy night" comment, which the military judge instructed the court members not to consider. The excluded evidence was relevant and material to the Defense's contention that Appellant and SrA FC may have engaged in consensual intercourse, and that SrA FC's trial testimony was based on a faulty reconstructed memory resulting from an alcohol-induced blackout. In particular, the court members' questions suggested they believed evidence of prior sexual contact between SrA FC and Appellant and of SrA FC's behavior during "drunk Jenga" would have been significant. We cannot say there was no "reasonable possibility" that the excluded evidence of sexual behavior earlier in the evening might have affected the court members' findings.

Accordingly, because of our holdings that the military judge erred in excluding the evidence under both Mil. R. Evid. 412(b)(1)(B) and b(1)(C) we cannot sustain Appellant's conviction.

### III. CONCLUSION

The findings of guilt and the sentence are **SET ASIDE**. A rehearing is authorized. Article 66(c), UCMJ, 10 U.S.C. § 866.

JOHNSON, Senior Judge (dissenting)

I concur with my colleagues that the proffered evidence met the exception for sexual behavior by an alleged victim with respect to the accused and offered to prove consent under Military Rule of Evidence (Mil. R. Evid.) 412(b)(1)(B), and that the military judge erred in finding otherwise. Likewise, I agree the

evidence met the low threshold for relevance under Mil. R. Evid. 401(a). However, because I cannot say the military judge's determination that the dangers of unfair prejudice substantially outweighed the probative value under Mil. R. Evid. 403 was a clear abuse of discretion, I respectfully dissent.

In my view, our decision in this case would turn on the standard of review. The relevant question is not whether the judges of the appellate court would have made the same ruling the trial judge did. Rather, we examine whether the military judge abused the discretion entrusted to him. "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987). In particular, as the majority notes, where a military judge articulates a proper balancing test under Mil. R. Evid. 403, an appellate court will not overturn the ruling absent a "clear" abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)).

In this case, the military judge explained his Mil. R. Evid. 403 analysis in his written ruling. For purposes of the test, he assumed the proffered evidence had relevance. Nevertheless, he could reasonably conclude the probative value was low. Permitting someone to drink alcohol off one's body as part of a risqué drinking game in the presence of co-workers and friends is a far cry from consenting to sexual intercourse. In addition, the evidence tended to show Appellant was focusing his attention on SrA FC rather than vice versa, and was therefore more probative of Appellant's intent than SrA FC's. Furthermore, the evidence was that SrA FC became intoxicated to the point of being physically ill and was put to bed. SrA FC testified that when she awoke, Appellant had already penetrated her as she slept. As the military judge instructed the court members, a sleeping or unconscious person is not competent to consent to sexual activity. *See* Article 120(g)(8)(B), Uniform Code of Military Justice, 10 U.S.C. § 920(g)(8)(B).

"[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citation omitted). The military judge concluded the probative value of the excluded evidence was low. For the reasons stated above, I believe that conclusion was reasonable and within the range of choices available to the military judge. At the same time, the military judge's concern that the court members might misapply this evidence to conclude that SrA FC's consent to Appellant's actions during the Jenga game implied consent to sexual intercourse hours later was not arbitrary, fanciful, or clearly unreasonable. *See McElhaney*, 54 M.J. at 130.

Therefore, I would hold the military judge did not abuse his discretion in excluding the evidence under Mil. R. Evid. 403 with respect to the Mil. R. Evid. 412(b)(1)(B) exception. Furthermore if, as the military judge concluded, the danger of unfair prejudice substantially outweighed the probative value of the evidence, the evidence would also necessarily fail to meet the "constitutionally required" exception of Mil. R. Evid. 412(b)(1)(C). *See United States v. Ellerbrock*, 70 M.J. 314, 318 (citation omitted) (stating evidence is constitutionally required if it is "relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice").

Regarding the Defense's request for reconsideration, I concede the military judge's handling of the court member instructions regarding Appellant's "crazy night" remark was awkward. Nevertheless, court members are presumed to follow the military judge's instructions absent evidence to the contrary. *United States v. Stewart*, 71 M.J. 38, 42 (C.A.A.F. 2012) (quoting *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000)). Ultimately, the military judge instructed the members to completely disregard SrA FC's testimony regarding Appellant's statement, and not to consider the Sexual Assault Nurse Examiner's testimony regarding it as referring to the charged offense or any consensual or nonconsensual sexual contact between Appellant and SrA FC. I do not find any evidence the members failed to follow this instruction, and therefore I would presume the members did not draw the unfair inference that this remark was a reference to sexual intercourse, which was the basis for the Defense's claim that the Government had opened the door.

Accordingly, I would affirm the findings and sentence.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

13