UNITED STATES, Appellee

v.

Jerry J. EDIGER, Private First Class
U.S. Army, Appellant

No. 08-0757

Crim. App. No. 20060275

United States Court of Appeals for the Armed Forces

Argued October 8, 2009

Decided January 5, 2010

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, STUCKY, and RYAN, JJ., joined.


Counsel


For Appellant:  Captain Elizabeth Turner (argued); Colonel Mark
Tellitocci, Lieutenant Colonel Matthew M. Miller, Lieutenant
Colonel Jonathan F. Potter, Major Grace M. Gallagher, and
Captain Alison L. Gregoire (on brief).

For Appellee:  Captain Sarah J. Rykowski (argued); Colonel
Norman F. J. Allen III, Lieutenant Colonel Martha L. Foss, and
Major Sara M. Root (on brief); Captain Philip M. Staten.

Military Judge:  Jeffery R. Nance and Mark P. Sposato


**This opinion is subject to revision before final publication.**

United States v. Ediger, No. 08-0757/AR

Judge ERDMANN delivered the opinion of the court.

At a contested general court-martial, Private First Class Jerry J. Ediger was convicted of one specification of rape of a person under the age of sixteen and two specifications of making a false official statement. Prior to trial the Government dismissed one specification of taking indecent liberties with a female under the age of sixteen. Ediger was sentenced to a dishonorable discharge and confinement for fifteen years. The convening authority reduced the confinement to fourteen years and eleven months but otherwise approved the sentence. The United States Army Court of Criminal Appeals affirmed the findings and sentence. United States v. Ediger, No. ARMY 20060275 (A. Ct. Crim. App. June 11, 2008).

"In a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant." Military Rule of Evidence (M.R.E.) 414. We granted review of the Army Court's decision to determine whether the military judge erred in admitting evidence of prior child molestation under M.R.E. 414. We find no error and affirm the Army Court of Criminal Appeals.

Background

The charges against Ediger arose out of allegations made by Ediger's former stepdaughter, MA. Ediger first became involved with MA's mother when MA was eight or nine years old, and he married her mother in 1999, when MA was twelve years old. The first of the charged incidents took place after Ediger married MA's mother. MA testified that after a family trip to Walmart, Ediger told her that she had embarrassed him and he wanted to embarrass her in the same way. Ediger told MA to go to her parents' bedroom and ordered her to pull down her pants and get on the bed. When MA refused, Ediger pulled down her pants and told her to get on the bed on all fours facing away from him. Ediger proceeded to sit in a chair behind MA with a pornographic magazine and masturbate. MA testified that she felt she had to do what Ediger said because he said he would hit her if she did not. When MA's mother returned home, MA told her what happened but her mother did not make any effort to remedy the situation.

Shortly after this incident MA left her mother's home and moved in with her grandparents. In 2001, MA moved back in with her mother and Ediger and she testified that it was during this time period that Ediger raped her. MA did not tell her mother about the rape at the time because she was scared that Ediger would become abusive towards her and assumed her mother would not believe her. After the rape MA again left to live with her

grandparents.  MA returned in 2005 when her mother was preparing for major surgery.  At that time MA decided to tell her mother about Ediger's abuse, which resulted in a criminal investigation and the filing of the instant charges against Ediger.

The charges filed against Ediger included:  the rape of MA; indecent liberties with MA (masturbating in her presence while looking at her with intent to gratify his sexual desires); indecent language (orally communicating to MA "You have nice tits," and "I love your ass," or words to that effect); and two specifications of a false official statement ("I did not ever masturbate in [MA]'s presence" or words to that effect, and "I did not rape [MA]" or words to that effect).

## M.R.E. 414 Testimony

The Government sought to introduce evidence of prior child molestation by Ediger pursuant to M.R.E. 414 in the form of testimony from TG.  Ediger filed a motion to suppress TG's testimony.  For purposes of the motion, the parties stipulated that TG would testify as follows:

(1) Ediger lived with TG and her mother when TG was between eight and eleven years old; (2) Ediger sexually abused her in a variety of ways including fondling her and forcing her to perform oral sex on him; (3) in one instance, Ediger punished TG by telling her to take off her pants and underwear and pose on her hands and knees on her bed while he spanked her, masturbated and licked her pubic area; (4) on another occasion, TG inadvertently walked in on Ediger and her mother engaged in a sex act and Ediger said to her, "you either have to leave, or you have to be a part of this," or words to that effect; and (5) TG reported

4

Ediger's conduct to the police but recanted at the urging of her mother.

In the motion to suppress, the defense urged the military judge to "weigh[] heavily the distance in time of the allegations, the danger of confusing the issue, and the little probative value, if any, [TG]'s testimony will have in assisting the Fact Finder in this case."

First Ruling on the Motion to Suppress TG's Testimony

The first military judge assigned to Ediger's case, Lieutenant Colonel (LTC) Jeffery R. Nance, denied the defense motion to suppress TG's testimony in a detailed ruling. Judge Nance's ruling analyzed TG's testimony in light of this court's precedent governing the admission of evidence under M.R.E. 413 and M.R.E. 414 as set forth in United States v. Wright, 53 M.J. 476 (C.A.A.F. 2000). Specifically, Judge Nance found:

a. The events involving [TG] occurred between seven and four years from the events for which the accused is facing trial, alleged by [MA].

b. The events are similar to those charged. The accused allegedly engaged in sexual acts with young girls, of the same age at the time of the incidents, who were not his natural daughters but were either his step daughter [sic] or over whom he was acting in that capacity toward. All events occurred at residents [sic] the accused shared with the mothers of the two girls as well as the girls themselves. On one occasion, the circumstances of the sexual acts are strikingly the same. The accused is alleged by both girls to have been forced them [sic] to pose on her hands and knees exposing her naked lower torso to the accused while the accused masturbated. The other striking similarity to these two alleged

acts is that, apparently under the guise of disciplining them, the accused told both girls that they had been acting up and had embarrassed him in public before telling them to take off their clothes and pose on their hands and knees. The accused also is alleged to have used threats that the girl's mothers would not believe them if they told her what happened to keep the girls quiet. All acts were forceful and coercive in nature.

c.    The frequency of the acts. The sexual acts with these minor girls occurred infrequently with each alleged victim but the similarity of events, the things he told them to keep them quiet, the scepter of physical violence used as a veiled threat and the guise of discipline for "acting up" or "embarrassing me in public" was remarkably similar even to the point of the same words being used.

d.    The presence or lack of intervening circumstances. There were none other than that the accused moved on to a new relationship with a different woman who also had a similarly aged young daughter from another marriage.

e.    The relationship between the parties. The relationship between the accused and both young girls was exactly alike. Though the accused was not married to [TG]'s mother, he lived in the same house, held himself out as her "Dad," administered discipline to her and took on the role as "Dad" to [TG] as far as her mother was concerned.

f.    Strength of proof of the act. [TG] will testify that these sexual acts were perpetrated upon her by the accused. There is no other evidence offered on these acts nor is there any contradictory evidence offered. [TG] allegedly reported these acts to the police but later recanted her allegations at her mother's request. The court finds that the trier of fact could conclude by a preponderance of the evidence that these uncharged acts occurred.

      g.    Time needed for proof of the prior act.  A minimum of time will be needed since only one witness will testify to these prior acts.

      h.    Distraction of the fact finder.  The court will ensure through limiting instructions and tailored direct and cross[-]examination that there is no mini-trial on collateral issues.

      i.    Potential for less prejudicial evidence.  There is not less prejudicial evidence concerning these sexual acts that the parties have identified that could be presented in this case.

      j.    Probative weight of the evidence.  The probative weight of the evidence is extremely high.  The evidence shows a clear factual pattern that the accused used on both girls to engage in sexually abusive conduct.

After he issued his ruling admitting the testimony of TG, Judge Nance asked the parties to provide proposed limiting instructions.  Prior to trial Judge Nance was replaced by LTC Mark P. Sposato, who presided over the remainder of the court-martial.

Dismissal of Indecent Liberties Charge and Renewal of Motion to Suppress TG's Testimony

After Judge Nance's ruling on the motion to suppress but before trial, the Government moved to dismiss Specification 1 of Charge III, the indecent liberties charge which alleged that Ediger masturbated while looking at MA on the bed while she was on her hands and knees.  In response to the dismissal of this charge, the defense renewed their motion to suppress TG's testimony, arguing that TG's testimony had been offered in support of the withdrawn indecent liberties specification.

7

Judge Sposato denied the motion stating, "I've reviewed the ruling of Colonel Nance and I affirm his ruling under 414, the evidence would appear to still be admissible and I conducted 403 balancing and I find, under the circumstances the evidence would be substantially more probative than prejudicial."[1]  Judge Sposato then informed counsel that he would prepare a limiting instruction to give to the panel following TG's testimony.  He subsequently provided the parties with a proposed limiting instruction, to which neither party objected.

TG's Testimony at Court-Martial

At Ediger's court-martial, TG testified that Ediger dated her mother in 1995 and 1996 when TG was between the ages of nine and eleven.  She testified that during that time, Ediger spanked and fondled her on a regular basis.  TG testified that Ediger punished her on one occasion by making her take off all her clothes, get on a bed on all fours, and then licked and fondled her genital area.  TG also testified that Ediger forced her to perform oral sex on him.  TG specifically testified to the following incident:

> I had a nightmare, so I woke up and I was going to mom's room and I walked in on them having sex and I immediately closed the door back, went back to my

---

[1] The second military judge misstated the balancing test in M.R.E. 403, which calls for evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

> room. The next day James told me that since I walked
> in on them pretty much if I wanted to see what was
> going on I could be a part of it.

At one point TG filed a police report but later recanted at the

urging of her mother and Ediger.

Military Judge's Instructions to the Panel on TG's Testimony

After TG testified, LTC Sposato read the following

instruction to the members:

> You've heard evidence through the testimony of
> [TG] that the accused may have previously committed
> other offenses of child molestation. You may consider
> the evidence of such other acts of child molestation
> for their tendency, if any, to show the accused's
> propensity to engage in child molestation, as well as
> their tendency, if any, to identify the accused as the
> person that committed offenses alleged in Charges I
> and III, to prove a plan or design of the accused to
> molest [MA] and to determine whether the accused had a
> motive to commit those offenses.
> You may not, however, convict the accused merely
> because you believe he committed these other offenses
> or merely because you believe he has a propensity to
> engage in child molestation. The prosecution's burden
> of proof to establish the accused's guilt beyond a
> reasonable doubt remains as to each and every element
> of each offense charged.

When giving this instruction, Judge Sposato erroneously included

a reference to Charge III (which initially contained two

specifications: the indecent liberties specification which had

been dismissed; and an indecent language specification for which

Ediger was found not guilty) when informing the members of the

charges for which they could consider TG's testimony. Judge

Sposato corrected this mistake when he gave the instruction a

second time prior to deliberations, by deleting the reference to Charge III.

## Discussion

The granted issue asks whether the military judge erred in admitting the testimony of TG pursuant to M.R.E. 413 and M.R.E. 414.[2]  Ediger argues that the military judges made the following errors in admitting TG's testimony:  Judge Sposato failed to properly instruct the members that TG's testimony should have been considered only in light of the rape charge; Ediger's comment to TG "you either have to leave or be a part of this" was not admissible as it does not constitute child molestation as defined in M.R.E. 414; and neither military judge performed an adequate analysis under M.R.E. 403.

In response, the Government argues that both military judges provided a proper analysis when admitting TG's testimony in light of this court's precedent in Wright, 53 M.J. 476.  The Government asserts that the military judges correctly evaluated the threshold factors and Judge Sposato properly instructed the members as to the propensity evidence.  Finally, the Government argues that even if the military judges erred, any error was harmless given the strength of the Government's case and the limiting instruction given by Judge Sposato.

---

[2] United States v. Ediger, 67 M.J. 416, 416-17 (C.A.A.F. 2009) (order granting review).

United States v. Ediger, No. 08-0757/AR

A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion. United States v. Manns, 54 M.J. 164, 166 (C.A.A.F. 2000). Admission of evidence under M.R.E. 414 requires a two-step analysis. First, the military judge must make three threshold findings: (1) whether the accused is charged with an act of child molestation as defined by M.R.E. 414(a); (2) whether the proffered evidence is evidence of his commission of another offense of child molestation as defined by the rule; and (3) whether the evidence is relevant under M.R.E. 401 and M.R.E. 402. United States v. Bare, 65 M.J. 35, 36 (C.A.A.F. 2007). Here, consideration of TG's testimony regarding prior acts of child molestation was triggered under M.R.E. 414 because Ediger was charged with an offense of child molestation in the rape of MA.

Once the three threshold factors are met, the military judge must then apply a balancing test under M.R.E. 403.[3] Id. "The importance of careful balancing arises from the potential for undue prejudice that is inevitably present when dealing with propensity evidence." United States v. James, 63 M.J. 217, 222

---

[3] M.R.E. 403 provides:

> Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time[.] Although relevant, evidence may excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

11

United States v. Ediger, No. 08-0757/AR

(C.A.A.F. 2006).  Inherent in M.R.E. 414 is a "general presumption in favor of admission."  See United States v. Berry, 61 M.J. 91, 94-95 (C.A.A.F. 2005); United States v. Dewrell, 55 M.J. 131, 138 n.4 (C.A.A.F. 2001).

"Where a military judge properly conducts the balancing test under Military Rule of Evidence 403, we will not overturn his decision unless there is a clear abuse of discretion." United States v. Ruppel, 49 M.J. 247, 251 (C.A.A.F. 1998). However, "[w]here the military judge is required to do a balancing test under M.R.E. 403 and does not sufficiently articulate his balancing on the record, his evidentiary ruling will receive less deference from this court."  Berry, 61 M.J. at 96.

Judge Nance provided a thorough balancing test, applying each of the Wright factors and explaining his analysis on the record.  When the defense renewed their motion to suppress TG's testimony after the Government dismissed the indecent liberties specification, Judge Sposato adopted Judge Nance's initial ruling and noted that the evidence would still be admissible. However, he did not explain why it was appropriate for him to adopt Judge Nance's ruling despite the dismissal of the indecent liberties charge.  While Judge Sposato stated that he had conducted a M.R.E. 403 balancing test and concluded that the evidence would be substantially more probative than prejudicial,

he did not explain his analysis on the record.[4]  Because Judge

Sposato did not record his balancing test on the record, his

ruling is given less deference than Judge Nance's ruling, which

provided a thorough analysis of the Wright factors.  Berry, 61

M.J. at 96.

Under the circumstances of this case, we find that Judge

Sposato properly adopted Judge Nance's earlier findings

regarding the admission of TG's testimony.  Although the

Government dismissed the indecent liberties charge alleging that

Ediger masturbated in the presence of and while looking at MA,

the Government did not dismiss the corresponding false official

statement specification which charged that Ediger made a false

official statement that "I did not ever masturbate in [MA]'s

presence."  At trial, when the Government dismissed the indecent

liberties charge, Judge Sposato asked trial counsel how the

Government intended to prove the false statement specification

without the related indecent liberties specification.  The

Government responded, "we can still elicit the evidence to [sic]

---

[4] Because the charges which Ediger faced were altered with the withdrawal of the indecent liberties specification, our review would have benefited from a complete Wright analysis and balancing test on the record by Judge Sposato.  As stated in James, we strongly suggest that military judges dealing with objections to propensity evidence proffered under M.R.E. 413 and M.R.E. 414 make a record of their application of M.R.E. 403.  63 M.J. at 222.  These safeguards are especially important in light of the fact that M.R.E. 413 and M.R.E. 414 propensity evidence can be both highly probative and highly prejudicial at the same time.

trial that the statement made in Charge II [the false official statement charge] is false."

Indeed, MA testified that Ediger forced her to pose naked on a bed on all fours in front of him while he masturbated. Therefore the same conduct raised in the dismissed charge, alleged masturbation in front of MA, remained at issue in Ediger's court-martial despite the Government's dismissal of the indecent liberties charge. The analysis undertaken by Judge Nance was still relevant and applicable despite the Government's dismissal of that charge. Under those circumstances, Judge Sposato appropriately adopted Judge Nance's ruling allowing for the admission of TG's testimony.

Judge Sposato's instructions on TG's Testimony

This court has stated, in regard to a military judge's responsibilities to properly instruct members as to the proper use of propensity evidence, as follows:

> [I]t is essential that . . . the members are instructed that M.R.E. 414 evidence may be considered for its bearing on an accused's propensity to commit the charged crime, the members must also be instructed that the introduction of such propensity evidence does not relieve the government of its burden of proving every element of every offense charged. Moreover, the factfinder may not convict on the basis of propensity evidence alone.

United States v. Schroder, 65 M.J. 49, 56 (C.A.A.F. 2007).

Ediger argues that the members should have been instructed that they could consider TG's testimony solely for the rape

14

charge. He specifically argues that "[i]n the absence of being told of this restriction, [the members] would have assumed that they could consider TG's testimony in determining appellant's guilt as to all charges." We note that once evidence is admitted under M.R.E. 414, that evidence "may be considered for any matter to which it is relevant." The members could therefore have considered TG's testimony in their evaluation of any of the charges facing Ediger for which it was relevant. M.R.E. 414.

Judge Sposato's instruction, which he gave to the members both after TG's testimony and again prior to releasing the members to deliberations, properly reflects the considerations discussed in Schroder. He was not required to instruct the members that the propensity evidence could be used "solely" for the rape charge.

TG's Testimony about Ediger's Statement

Ediger argues that both military judges improperly admitted TG's testimony about Ediger's comment after she walked in on him and her mother having sex. Ediger claims that the statement ("if I wanted to see what was going on I could be a part of it") does not fall within the definition of child molestation as that term is defined in M.R.E. 414 and thus does not meet the second threshold requirement for admission.

The second threshold requirement under M.R.E. 414 is that the proffered evidence must be evidence of the commission of another offense of child molestation as defined by M.R.E. 414.[5] The Government argues that this statement constituted an invitation or solicitation to participate in sexual activity. However, we need not decide whether the statement falls within the definition in M.R.E. 414, because even if we were to assume that the admission of the statement was error, it was harmless under the test for prejudice from an erroneous evidentiary

---

[5] Under M.R.E. 414:

"child" means a person below the age of sixteen, and "offense of child molestation" means an offense . . . that involve[s]

(1) any sexual act or sexual contact with a child proscribed by the Uniform Code of Military Justice, Federal law, or the law of a State;

(2) any sexually explicit conduct with children proscribed by the Uniform Code of Military Justice, Federal law, or the law of a State;

(3) contact between any part of the accused's body, or an object controlled or held by the accused, and the genitals or anus of a child;

(4) contact between the genitals or anus of the accused and any part of the body of a child;

(5) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on a child; or

(6) an attempt or conspiracy to engage in conduct described in paragraphs (1) through (5) of this subdivision.

M.R.E. 414(d)(1)-(6).

ruling set forth in United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999) (citing United States v. Weeks, 20 M.J. 22, 25 (C.M.A. 1985)).  In Kerr, we evaluated the following factors to determine prejudice:  "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question."  Id.

The Government presented a strong case against Ediger at court-martial.  In addition to the previously discussed direct testimony from MA and TG, the Government called two witnesses with whom Ediger had discussed his relationship with MA.  A friend of Ediger's testified that Ediger made insinuations about a sexual encounter with MA.  A criminal investigator who interviewed Ediger testified that Ediger told him that he thought about MA when he masturbated and planned on pursuing a romantic relationship with MA after he ended his relationship with her mother.  The Government also presented testimony from a social worker and a psychologist that supported MA's behavior as a rape victim.

The defense case consisted of an attempt to discredit MA by showing inconsistencies in her statements to investigators and by trying to establish a motive to fabricate her accusations, as well as arguing that there was no physical evidence of a sexual

relationship with MA.  In comparison, the Government's evidence was considerably stronger than the defense case.

The third prong of the Kerr test evaluates the materiality of the proffered evidence.  This prong is "merely a test for relevancy and materiality."  Weeks, 20 M.J. at 25 n.3.  TG's testimony that Ediger told her "if I wanted to see what was going on I could be a part of it," is not direct evidence of the charges against Ediger, but rather some evidence of his propensity to commit those offenses.  The fourth prong of the Kerr test evaluates the quality of the evidence.  While TG's testimony as to Ediger's statement was the same quality as her other propensity testimony, it was of "no better quality than that which was already before the finder of fact."  United States v. Roberson, 65 M.J. 43, 48 (C.A.A.F. 2007).  In the context of evidence presented at trial, TG's testimony about the statement was not "particularly significant" either in its quality or materiality.  See United States v. Dobson, 63 M.J. 1, 20 (C.A.A.F. 2006).

In weighing the four factors set forth in Kerr, we find that Ediger did not suffer prejudice because of the admission of the statement.  We therefore find that even if the military judge erred in admission of the statement, the error was harmless.  The additional evidence of Ediger's statement could

not have tipped the scales in favor of the Government any more than TG's testimony already had.

Balancing and Relevancy Analysis of TG's testimony

Ediger argues that the most significant error was Judge Nance's finding that the events alleged by TG were similar to the events charged by MA.  Specifically, Ediger argues that MA alleged that she was raped whereas TG claimed that she was forced to perform oral sex and repeatedly molested by Ediger.  Ediger claims the acts are "widely disparate."  Ediger also argues that the only similar act referenced in TG's stipulated testimony at the motions hearing -- that Ediger masturbated in front of her -- was not testified to by TG at trial.  However, contrary to Ediger's assertions, TG did testify at trial that Ediger masturbated in front of her on one occasion when he ultimately forced her to perform oral sex.

Regardless, Ediger's argument that the acts alleged must be exactly the same is unpersuasive.  This court has never required the exact same acts of sexual molestation for the admission of evidence under M.R.E. 414.  See James, 63 M.J. at 218-20 (acts of uncharged child molestation were "similar in their sexual nature" although victims did not describe engaging in precisely the same acts with the defendant); Schroder, 65 M.J. at 51-52 (evidence of other acts of molestation and sodomy admitted in court-martial for rape and indecent acts).

19

Ediger also argues that the military judge did not properly evaluate the temporal proximity factor in his balancing analysis under M.R.E. 403, but simply stated the length of time between the allegations made by MA and TG. Judge Nance's specific reference to the temporal proximity of the events reflects that he factored the time difference into his analysis.[6] Temporal proximity is but one factor considered by the military judge and we have stated "[t]he length of time between the events alone is generally not enough to make a determination as to the admissibility of the testimony." Berry, 61 M.J. at 96.

Ediger also argues that the military judge did not properly evaluate the "strength of proof" factor in his Wright analysis. Ediger raises the fact that the alleged police report filed by TG was not available due to the passage of time and argues that the report could have shown whether TG's claims were consistent. Contrary to Ediger's claim, this factor was specifically addressed by Judge Nance:

> There is no other evidence offered on these acts nor is there any contradictory evidence offered. [TG] allegedly reported these acts to the police but later recanted her allegations at her mother's request. The court finds that the trier of fact could conclude by a

---

[6] This court has concluded that incidents occurring more than eight years prior to the charged incident were admissible in Dewrell, 55 M.J. at 137-38. In United States v. Bailey, 55 M.J. 38, 41 (C.A.A.F. 2001), we allowed admission of evidence of uncharged misconduct occurring approximately ten years before the charged offense.

> preponderance of the evidence that these uncharged
> acts occurred.

We agree with Judge Nance's conclusion and we are satisfied that the direct testimony from TG could have convinced the panel that Ediger committed the similar acts alleged by TG.

## Conclusion

We find that TG's testimony of prior child molestation under M.R.E. 414 was properly admitted. Judge Nance conducted a thorough Wright analysis and that analysis was properly adopted by Judge Sposato. The decision of the United States Army Court of Criminal Appeals is affirmed.