# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39548**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Charles M. MCCALL**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 March 2020

————————————

*Military Judge:* Jefferson B. Brown.

*Approved sentence:* Dishonorable discharge, confinement for 15 months, and reduction to E-1. Sentence adjudged 18 April 2018 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Captain M. Dedra Campbell, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Michael T. Bunnell, USAF; Major Mary Ellen Payne, USAF; Justin A. Miller (civilian intern).[1]

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge POSCH and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

[1] Mr. Miller was a legal intern with the Air Force Legal Operations Agency and was at all times supervised by attorneys admitted to practice before this court.

J. JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of one specification of attempted sexual abuse of a child in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.[2] The military judge sentenced Appellant to a dishonorable discharge, confinement for 15 months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence, but pursuant to Article 58b(b), 10 U.S.C. § 858b(b), waived $258.00 per month of mandatory forfeitures of pay for the benefit of Appellant's dependent child.

Appellant raises seven issues on appeal: (1) whether the military judge abused his discretion by failing to limit the scope of evidence admitted pursuant to Mil. R. Evid. 414 and by admitting irrelevant evidence pursuant to Mil. R. Evid. 404(b); (2) whether trial counsel made improper arguments; (3) whether civilian trial defense counsel was ineffective with respect to his sentencing argument, the defense sentencing evidence, and failure to object to certain prosecution exhibits and arguments; (4) whether the addendum to the staff judge advocate's recommendation (SJAR) failed to address a legal error the Defense raised to the convening authority; (5) whether Appellant is entitled to relief for post-trial delay; (6) whether the military judge abused his discretion by denying the Defense's request for access to devices used by law enforcement to investigate the charged offense; and (7) whether trial defense counsel were ineffective in failing to timely request and compel certain discovery and in failing to speak to sentencing witnesses before trial.[3] With respect to issues (4), (6), and (7), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With respect to the remaining issues, we do not find error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

---

[2] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] Appellant raises Issues (6) and (7) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1992).

## I. BACKGROUND

Appellant joined the Air Force in December 2015 when he was 25 years old. In late March 2016, Appellant was living on Joint Base San Antonio (JBSA)-Lackland, Texas, where he had been undergoing training.

On 28 March 2016, Appellant responded to a post on "Whisper," an Internet application that permits users to post photos and messages and to send responses anonymously. The post Appellant responded to featured a photo of a 14-year-old girl with the caption, "Anyone on lackland base? Hmu" [sic]. In an exchange of messages over several days, Appellant identified himself as a 25-year-old Airman temporarily assigned to JBSA-Lackland for training. The anonymous poster identified themselves as "Helen," the 14-year-old daughter of an active duty Air Force member stationed at JBSA-Lackland.[4] In reality, "Helen" was a fictitious persona created by Special Agent (SA) JH, an agent of the Air Force Office of Special Investigations (AFOSI).

From 28 March 2016 until 5 April 2016, Appellant and "Helen" exchanged a series of messages, first on Whisper and later by cell phone text message. In the course of their correspondence, Appellant provided several photographs of himself, and "Helen" provided two additional photographs of herself, none of them featuring nudity or sexually explicit conduct.[5] However, Appellant did make a number of sexually explicit comments to "Helen" on such topics as masturbation, having an erection, oral sex, desiring to meet to engage in sexual activity, and fantasizing about digitally penetrating "Helen's" vagina in a movie theater. "Helen" did not initiate any of the sexual comments.

SA JH was able to identify Appellant based on Appellant's reported age, his presence as a trainee on JBSA-Lackland, and photographs of servicemembers in the Defense Enrollment Eligibility Reporting System database. The message exchange ended when on 6 April 2016 the AFOSI brought Appellant to their office for an interview, on the pretense that "Helen's" father had discovered the messages and contacted their office. Appellant agreed to speak to the agents after they advised him of his rights. Appellant made a number of incriminating admissions during the videorecorded interview, including that he had in fact written the messages to "Helen."

Ultimately, Appellant was tried and convicted for a single specification of attempted sexual abuse of a minor by "intentionally communicating indecent

---

[4] "Helen" stated her age on three separate occasions over the course of her correspondence with Appellant.

[5] The photographs of "Helen" were pictures of a female AFOSI agent taken when she was 13 and 14 years old.

language by sending sexually explicit language to 'Helen' and describing potential sexual encounters . . . ," in violation of Article 80, UCMJ.

## II. DISCUSSION

### A. Mil. R. Evid. 414 and Mil. R. Evid. 404(b)

#### 1. Additional Background

At the conclusion of the AFOSI interview, Appellant consented to have the AFOSI agents review his cell phone. The agents sent Appellant's phone to the Cyber Forensics Laboratory (CFL) at the Defense Cyber Crime Center for further analysis. The CFL produced an extraction report that reproduced not only Appellant's Whisper and text communications with "Helen," but also numerous other exchanges Appellant engaged in on Whisper. Among these exchanges were several with individuals who purported to be under the age of 16 years. Other than Appellant himself, the AFOSI did not ascertain the identity of any individual involved in these additional communications.

Before trial, the Government identified 11 of these additional communications on Whisper—each a series of messages between Appellant and another individual occurring between 28 March 2016 and 2 April 2016—that it intended to introduce at trial. Two of the communications, with individuals identified as "queen [H]" and "k," involved sexual comments or references by Appellant; the remaining nine did not have explicit sexual content. The Government contended that these communications were admissible under Mil. R. Evid. 414[6] as evidence of crimes of child molestation similar to the charged offense, and also were relevant and admissible under Mil. R. Evid. 404(b) to show Appellant's absence of mistake, intent, plan, and motive, as well as to rebut a possible defense of entrapment. The Defense moved in limine to exclude such evidence. The military judge conducted a hearing on the Defense's motion at which he received evidence and argument from counsel.

In a written ruling, the military judge granted the defense motion in limine in part and denied it in part. The military judge found Appellant's communications with "queen [H]" and "k" were admissible under Mil. R. Evid. 414. However, he found the nine communications that did not include sexual references were not admissible under Mil. R. Evid. 414, because court members could not find by a preponderance of evidence that these messages were instances of "child molestation." The military judge further found these nine non-explicit

---

[6] The Government initially provided notice it intended to offer this evidence under Mil. R. Evid. 413 rather than Mil. R. Evid. 414, but corrected its position at the motion hearing. The military judge found the Government's notice under Mil. R. Evid. 414 to be timely.

communications were nevertheless relevant under Mil. R. Evid. 404(b) to demonstrate "intent, absence of mistake or accident, modus operandi, and to rebut—if raised—the defense of entrapment." However, the military judge further found the volume of these other messages presented some danger of unfair prejudice; therefore, he held the Government could "choose two sample conversations in addition to the [Mil. R. Evid.] 414 evidenc[e], and may generally summarize the remaining seven conversations."

At trial, the Government introduced Appellant's communications with "queen [H]" and "k," as well as two other communications (with "BleachBuddie14" and "[J]"), in accordance with the military judge's ruling.

**2. Law**

### a. Standard of Review

"The standard of review for a military judge's decision to admit evidence is abuse of discretion." *United States v. Fetrow*, 76 M.J. 181, 185 (C.A.A.F. 2017) (citing *United States v. Yammine*, 69 M.J. 70, 73 (C.A.A.F. 2010)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citation omitted). "The question of whether the admitted testimony constitutes evidence that the accused committed another offense of child molestation under M.R.E. 414 is one of law, reviewed de novo." *Fetrow*, 76 M.J. at 185 (citing *Yammine*, 69 M.J. at 73).

### b. Mil. R. Evid. 404(b)

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is generally not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion. However, such evidence may be admissible for another purpose, including, *inter alia*, proving intent, knowledge, or absence of mistake. Mil. R. Evid. 404(b)(2). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989). We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b):

> 1. Does the evidence reasonably support a finding by the court members that [the] appellant committed prior crimes, wrongs or acts?

> 2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?

> 3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?

*United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010) (alterations in original) (quoting *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989)).

### c. Mil. R. Evid. 414

Mil. R. Evid. 414 provides an exception to Mil. R. Evid. 404(b)'s general prohibition on propensity evidence in cases in which the accused is charged with a qualifying "act of child molestation." Mil. R. Evid. 414(a). Mil. R. Evid. 414(d) defines "child molestation" to include, *inter alia*, any conduct prohibited by Article 120b, UCMJ, or any attempt to engage in such conduct. If evidence is admitted under Mil. R. Evid. 414, it "may be considered on any matter to which it is relevant," including propensity. Mil. R. Evid. 414(a); *United States v. James*, 63 M.J. 217, 220 (C.A.A.F. 2006).

Admission of evidence under Mil. R. Evid. 414 requires a two-step process. In the first step,

> [T]he military judge must make three threshold findings: (1) whether the accused is charged with an act of child molestation as defined by [Mil. R. Evid.] 414(a); (2) whether the proffered evidence is evidence of his commission of another offense of child molestation as defined by the rule; and (3) whether the evidence is relevant under [Mil. R. Evid.] 401 and [Mil. R. Evid.] 402.

*United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (citing *United States v. Bare*, 65 M.J. 35, 36 (C.A.A.F. 2007)).

Second, if the three threshold factors are met, the military judge must then apply a balancing test under Mil. R. Evid. 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence. *Id.*; *see United States v. Wright*, 53 M.J. 476, 482–83 (C.A.A.F. 2000). Although not exhaustive or exclusive, our superior court has identified a list of factors to consider under this balancing test: "Strength of proof of prior act—conviction versus gossip; probative weight of evidence; potential for less prejudicial evidence; distraction of factfinder; . . . time needed for proof of prior conduct[;] . . . temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and relationship between the parties." *Wright*, 53 M.J. at 482 (citations omitted); *see United States v. Dewrell*, 55 M.J. 131, 138 (C.A.A.F. 2001).

"Inherent in [Mil. R. Evid.] 414 is a general presumption in favor of admission." *Yammine*, 69 M.J. at 74 n.4 (citing *Ediger*, 68 M.J. at 248).

### 3. Analysis

On appeal, Appellant contends the military judge abused his discretion with respect to admitting evidence under both Mil. R. Evid. 414 and Mil. R. Evid. 404(b). We address each type of evidence in turn.

### a. Mil. R. Evid. 414 Evidence

We find the military judge did not abuse his discretion when he admitted Appellant's communications with "queen [H]" and "k" pursuant to Mil. R. Evid. 414. He clearly explained his reasoning as he applied the correct legal framework, beginning with the three threshold criteria set forth in *Ediger*, 68 M.J. at 248. First, he correctly found Appellant was charged with an offense of child molestation, specifically an attempt to commit the offense of sexual abuse of a minor, a violation of Article 120b, UCMJ. *See* Mil. R. Evid. 414(d)(2)(G).

Second, the military judge reasonably concluded court members could find by a preponderance of evidence that the record of Appellant's communications with "queen [H]" and "k" constituted other offenses of child molestation. *See* Mil. R. Evid. 414(a). Indeed, these other communications were very similar to the charged offense, in that they also involved communicating sexually explicit language on Whisper to recipients who purported to be under 16 years old.

Third, the military judge properly concluded these "other" communications were relevant to the charged offense. He explained, "[t]hese two discussions provide some evidence of [Appellant's] intent to gratify his sexual desire when he used similar language in the charged specification and is relevant to whether there was an absence of mistake as to whether 'Helen' was a minor." In addition, the military judge noted Mil. R. Evid. 414 "recognize[s] that . . . similar incidents of child molestation are relevant to whether an accused has a propensity to engage in incident[s] of child molestation." *See United States v. Dewrell*, 52 M.J. 601, 608 (A.F. Ct. Crim. App. 1999) ("[I]n view of the language Congress used in [Mil. R. Evid.] 413 and 414, relevancy is all but mandated.") (citations omitted).

Having properly found these communications met the three threshold criteria, the military judge also reasonably applied the Mil. R. Evid. 403 balancing test and found the probative value of the Mil. R. Evid. 414 evidence was not substantially outweighed by the danger of unfair prejudice or other countervailing factors. He individually assessed each of the *Wright* factors in his written ruling, and concluded that most of them favored admission, none favored exclusion, and two (potential for less prejudicial evidence and frequency of the acts) were essentially neutral. Where a military judge conducts a proper Mil. R. Evid. 403 balancing test and articulates his analysis on the record, "the ruling will not be overturned unless there is a 'clear abuse of discretion.'" *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (quoting *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998)). We agree with the military

judge that the balancing in this case favored admission, and we find no clear abuse of discretion.

On appeal, Appellant does not contend that his communications with "queen [H]" and "k" failed to meet the threshold test for Mil. R. Evid. 414 evidence. Instead, he faults the military judge for failing to "properly limit the scope of the admissible propensity evidence to protect against the danger of unfair prejudice." Appellant notes the military judge admitted 51 pages of Mil. R. Evid. 414 text conversations, permitted trial counsel to have the Government's expert read through substantial portions of Appellant's explicit conversation with "k" line by line, and permitted the Government to refer in argument to "queen [H]" and "k" as if they were actual minors despite the fact their identities had never been established. Appellant contends this "unfettered" use of the evidence was unfairly prejudicial, and implies the military judge either should have intervened to limit the Government's use of the evidence, or excluded it under Mil. R. Evid. 403.

We are not persuaded. Essentially, Appellant does not fault the military judge's preliminary ruling allowing the evidence under Mil. R. Evid. 414 which, as discussed above, was appropriate. To the extent Appellant complains the Government exaggerated or misused this evidence, "[m]ilitary judges are presumed to know the law and follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 485 (C.A.A.F. 1997)). In light of the military judge's proper and clearly-articulated analysis of the admissibility and relevance of this evidence, we are confident he considered it appropriately in its proper context.

### b. Mil. R. Evid. 404(b) Evidence

We further find no material prejudice to Appellant's substantial rights with regard to Mil. R. Evid. 404(b). Although the military judge's written analysis of this rule is less explicit and more abbreviated than his application of Mil. R. Evid. 414, he did explain his reasoning in his ruling, and therefore we review for a clear abuse of discretion. *See Manns*, 54 M.J. at 166 (citation omitted). We consider the military judge's ruling in light of the three-part *Reynolds* test for admissibility of Mil. R. Evid. 404(b) evidence. *See Ediger*, 68 M.J. at 248.

First, the communications in question with "BleachBuddie14" and "[J]" were of a similar nature to the evidence of Appellant's communications with "Helen"—the subject of the charged offense—as well as those with "queen [H]" and "k," and would support a finding by a preponderance of the evidence that Appellant in fact engaged in such communications.

Second, the military judge found this evidence was relevant for multiple purposes—specifically to demonstrate intent, absence of mistake or accident,

and modus operandi, and to rebut a possible defense of entrapment. We find no abuse of discretion in the military judge's ruling with respect to intent, mistake or accident, and entrapment; and to the extent the evidence was not relevant to modus operandi, we find the military judge's ruling harmless.

With regard to entrapment, Appellant notes the Defense did not ultimately raise that defense. However, it was not error for the military judge to rule the evidence would be admissible for this purpose.

With regard to intent, Appellant contends this evidence of non-criminal communication with purported minors had no tendency to demonstrate an intent to engage in acts of child sexual abuse through indecent language with "Helen." However, relevance is a "low threshold." *United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010). The Government was required to prove Appellant attempted—that is, acted with specific intent—to commit the offense of sexual abuse of a child by intentionally communicating indecent language to "Helen." *See* Article 80, UCMJ; Article 120b, UCMJ, 10 U.S.C. § 920b. We agree with the military judge that Appellant's willingness to engage on Whisper with multiple individuals who held themselves out to be under the age of 16 years in non-sexually explicit conversations, in the same time frame that he engaged in three other communications that were sexually explicit, has some tendency to demonstrate his indecent communications to "Helen" were intentional. *See* Mil. R. Evid. 401(a). For example, Appellant's awareness of multiple other individuals purporting to be children while communicating on Whisper has some tendency to increase the likelihood he believed "Helen" was also actually under 16 years old.

With regard to absence of mistake, Appellant contends the non-explicit communications with "BleachBuddie14" and "[J]" were cumulative with other evidence that Appellant was aware that individuals under 16 years of age used Whisper, and in any event admitting the entirety of the conversations was unnecessary. However, these arguments do not impugn the *relevance* of these communications, i.e., that they have some tendency to indicate Appellant did not overlook or make a mistake as to "Helen's" age.

With regard to modus operandi, Appellant properly cites prior decisions of this court for the proposition that, where identity of the perpetrator is not in issue, the Mil. R. Evid. 404(b) evidence is not relevant to demonstrate modus operandi. *See United States v. Rollins*, 23 M.J. 729, 735 (A.F.C.M.R. 1986) ("If identity is not in doubt and the only issue is whether the criminal act was committed, modus operandi is not relevant."); *United States v. McIntyre*, Misc. Dkt. No. 2013-24, 2014 CCA LEXIS 19, at *17–18 (A.F. Ct. Crim. App. 16 Jan. 2014) (relying on *Rollins*). In this case, the identity of the perpetrator was not in issue. However, as the Government observes, the military judge properly found the evidence relevant for other purposes and did not improperly consider

it for propensity. We note again Appellant was tried by a military judge; thus, notwithstanding that the Mil. R. Evid. 404(b) material may not have been relevant to Appellant's identity, we are confident the military judge considered the evidence for relevant purposes, and not as evidence of propensity or for any other improper purpose. *See Erickson*, 65 M.J. at 225.

Third, for similar reasons, and as with the Mil. R. Evid. 414 evidence, we find the probative value of these communications was not substantially outweighed by the danger of unfair prejudice. The military judge is presumed to know the law, and his rulings and rationale indicate he did not intend to use this evidence for an improper purpose. *See id.* Moreover, we find the other dangers that Mil. R. Evid. 403 guards against, such as confusion, delay, and cumulativeness, to be of minimal concern—particularly in light of the military judge's decision to admit the text of only two of the nine non-explicit conversations.

## B. Improper Argument

### 1. Law

Improper argument is a question of law that we review de novo. *United States v. Frey*, 76 M.J. 245, 248 (C.A.A.F. 2014) (citation omitted). If there is no objection at trial, on appeal the appellant bears the burden to demonstrate plain error. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citations omitted). When reviewing an allegedly improper argument for plain error, the appellate court "must determine: (1) whether trial counsel's arguments amounted to clear, obvious error; and (2) if so, whether there was 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Id.* (quoting *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017)) (additional citations omitted).

"Trial prosecutorial misconduct is behavior by the prosecuting attorney that 'oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88) (additional citation omitted).

"A prosecutorial comment must be examined in light of its context within the entire court-martial." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citation omitted). "[P]rosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident" that the appellant was convicted and

sentenced on the basis of the evidence alone. *Fletcher*, 62 M.J. at 184; *see United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (regarding sentencing arguments). In assessing prejudice from improper argument, we balance three factors: (1) the severity of the misconduct; (2) the measures, if any, adopted to cure the misconduct; and (3) the weight of the evidence supporting the conviction or sentence. *See Halpin*, 71 M.J. at 480; *Fletcher*, 62 M.J. at 184.

**2. Analysis**

Appellant argues that the trial counsels' arguments were improper in three respects. Specifically, Appellant contends senior trial counsel and assistant trial counsel misused the evidence admitted pursuant to Mil. R. Evid. 404(b) during their findings and sentencing arguments, respectively; senior trial counsel improperly commented on Appellant's constitutional right to remain silent; and senior trial counsel improperly referred to victim impact during her rebuttal findings argument.

However, trial defense counsel did not object to any of these arguments, and in order to obtain relief on appeal the Defense bears the burden to demonstrate a reasonable probability of a different result had the asserted error not occurred. *See Voorhees*, 79 M.J. at 9 (citation omitted). In this regard, it is significant that Appellant was tried by a military judge alone. As the United States Court of Appeals for the Armed Forces (CAAF) has explained:

> When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle. A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilt or innocence. . . . As a result, "plain error before a military judge sitting alone is rare indeed."

*United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000) (citations omitted). Similarly, we presume the military judge is able to filter out improper argument in the absence of evidence to the contrary. With this in mind, we turn to the specifics of Appellant's case.

As an initial matter, we note the Government's case for findings was very strong. *See Fletcher*, 62 M.J. at 164. The Government introduced the record of Appellant's sexually explicit communications with "Helen," which extended over several days and in the course of which "Helen" repeatedly informed him she was 14 years old. The Government also introduced Appellant's recorded AFOSI interview in which he admitted writing the messages. Any suggestion that Appellant might have overlooked "Helen's" age was undercut by the evi-

dence that during the same time frame he willingly engaged in other conversations on Whisper with individuals purporting to be girls under the age of 16 years, two of which were also sexually explicit.

### a. Use of Mil. R. Evid. 404(b) Evidence

Turning to Appellant's assertions of improper argument, Appellant's non-explicit communications with "BleachBuddie14" and "[J]" were admitted pursuant to Mil. R. Evid. 404(b) as evidence of, *inter alia*, intent and absence of mistake. During argument on findings, senior trial counsel referred to Appellant's apparent interest in pictures of these two individuals, and Appellant's questioning "BleachBuddie14's" assertion that he was too old for her. We find senior trial counsel's remarks were fair comments consistent with purposes for which this evidence was admitted, and Appellant has not demonstrated "clear, obvious error." *Voorhees*, 79 M.J. at 9 (citation omitted).

Assistant trial counsel's use of the "BleachBuddie14" and "[J]" evidence during sentencing argument, which the Government does not squarely address, was potentially more problematic. After describing Appellant's explicit comments to "queen [H]" and "k," admitted as prior acts of child molestation pursuant to Mil. R. Evid. 414, assistant trial counsel then stated:

> And, finally, we know [Appellant] talked to ["[J]"] who indicated she was 11 [years old], and he did turn the conversation, right. He asked for pictures. And all the evidence in this case shows you that he had only one purpose for asking for pictures. And so when he asked Beach Bunny [sic] "what's your upper limit of guys you go out with?" We certainly can tell from ["[J]"] that, well, [Appellant's] limit is something as low as 11.

The military judge admitted evidence of Appellant's communications with "BleachBuddie14" and "[J]" specifically as evidence of intent, absence of mistake or accident, modus operandi, and to rebut entrapment relevant to proving the charged offense, none of which were at issue at this stage of the proceedings. Mil. R. Evid. 404(b) "does not provide a basis for admission of evidence during sentencing that is not otherwise admissible under R.C.M. 1001(b)(4)." *United States v. Tanner*, 63 M.J. 445, 448 (C.A.A.F. 2006) (citing *United States v. Wingart*, 27 M.J. 128, 135–36 (C.M.A. 1988)). R.C.M. 1001(b)(4) permits the Government to present in sentencing "aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty."

However, we need not definitively decide whether assistant trial counsel's use of this evidence in sentencing was clear error, or whether there was a proper use for such evidence in aggravation or as rebuttal to the Defense's evidence of rehabilitation potential. Because the Defense did not object to this

argument at trial, Appellant bears the burden to demonstrate a reasonable probability of a different result. In light of our presumption that the military judge knows the law and filters out impermissible evidence and argument, Appellant cannot meet that burden here.

### b. Comment on Appellant Not Making a Written Statement

During her rebuttal argument on findings, senior trial counsel stated with regard to Appellant's AFOSI interview:

> And finally at the end of the video they offer him the opportunity to write a statement; perfect opportunity to explain yourself if OSI has shut you down and there is valid information that you want to put forward that they need to know about and you want to explain the why. But what does he say when they offer him that chance? He says "I can't make sense of what I would say right now." There's no explanation, sir, other than that he's guilty.

To be perfectly clear, this was a blatant and inappropriate invitation for the finder of fact to hold against Appellant his constitutional right to decline to make a statement. Before a panel of members, this argument might have inflicted irreparable harm to the fairness of the proceedings. However, the military judge recognized the impropriety of the argument. At the conclusion of senior trial counsel's rebuttal, the military judge stated he "will not consider [Appellant's] decision to refrain from providing a written statement," which he deemed as Appellant "invoking his right to remain silent, and as such the court will not consider that as any substantive evidence in this case or consider it [sic] any inferences as argued by the trial counsel regarding that election." The military judge could and arguably should have condemned senior trial counsel's argument more strongly. *See Voorhees*, 79 M.J. at 14–15. However, we are left in no doubt that this improper argument did not play a role in the military judge's findings.

### c. Comment on Victim Impact in Argument on Findings

Finally, Appellant cites another portion of the rebuttal findings argument as improper. Senior trial counsel argued:

> [T]his operation that OSI was undertaking is highly valuable to the Air Force and society as a whole. Talking like this to minors thrusts them way too early into an adult world. It makes them sexualize prematurely, and the negative consequences of that not only to the child but to society as a whole, the ripple effect, it's huge.

At this point, the military judge interrupted to ask, "[i]s that a sentencing argument rather than a findings argument?" The senior trial counsel responded that she was "just coming to a conclusion," and she quickly concluded without returning to the subject of victim impact. Although the military judge did not expressly state that he would not consider this quoted portion of the argument, his interruption and question indicated he recognized this argument about the impact of the charged offense was essentially irrelevant. Coupled with the general presumption that the military judge knows and properly applies the law, we are very confident this asserted error did not influence the findings.

## C. Ineffective Assistance of Counsel

### 1. Law

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Gooch*, 69 M.J. at 362 (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted).

### 2. Analysis

Appellant contends his trial defense counsel, Mr. DC and Maj SH, were ineffective in multiple respects. At the Government's request, this court ordered and received from Mr. DC and Maj SH declarations responsive to Appellant's claims of ineffective assistance. Because their declarations do not raise any substantive factual disputes, we find no post-trial evidentiary hearing is required to resolve this assignment of error. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We consider Appellant's arguments in turn and conclude the alleged errors warrant no relief.

### a. Sentencing Argument

During Mr. DC's sentencing argument, he paused and stated: "I meant to ask this before I stood up, but maybe I'm confused. The DD [dishonorable discharge] is statutorily required, is that correct?" The military judge took a moment to consult his materials before informing Mr. DC that the offense of attempted sexual abuse of a child did not carry a mandatory minimum sentence. Trial counsel concurred. Mr. DC then continued with his argument. Although Mr. DC conceded reduction in rank and some period of confinement was appropriate, he did not concede that a punitive discharge was appropriate. Rather, Mr. DC asked the military judge to "spare" Appellant a punitive discharge, and opined that "a punitive discharge is not what we see in this case."

Appellant now contends Mr. DC's question to the military judge indicated he was unprepared, and that there is no reasonable explanation for Mr. DC not to have familiarized himself with the applicable minimum and maximum sentences. Appellant further argues Mr. DC's apparent assumption that a minimum dishonorable discharge applied effectively conceded such a punishment was appropriate, and left him "unable to present a competent or persuasive sentencing argument, especially in regards to a punitive discharge."

In response, Mr. DC explains that during the assistant trial counsel's sentencing argument he realized the parties had not discussed the applicable maximum and minimum punishments with the military judge. Mr. DC states:

> I understood there was not a mandatory punitive discharge and based on trial counsel's sentence recommendation I wanted to clarify on the record the court's understanding of both the maximum and minimum punishment. I recognize that both the timing of the question and the manner in which I phrased my question to the military judge may have been confusing and inartful. Although an inopportune moment, my intent was to gain clarity for myself and the record.

We agree with Mr. DC that his question was inartful at best, posed in such a way as to suggest he incorrectly believed a dishonorable discharge was mandatory. However, Appellant bears the burden to demonstrate prejudice as well as deficient performance. If Appellant cannot demonstrate prejudice, we need not determine whether Mr. DC's performance was constitutionally deficient under *Strickland. See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (quoting *United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005)). In this case, Appellant cannot demonstrate prejudice. The military judge was clearly aware a dishonorable discharge was not mandatory. Mr. DC did not concede a punitive discharge, and argued against such a punishment. We are not persuaded a reasonable probability exists that, absent Mr. DC's question, the military judge would have imposed a more favorable sentence for Appellant.

### b. Failure to Present Character Letters at Sentencing

Appellant asserts that a few days before trial, his defense team lost approximately six character letters prepared for sentencing proceedings. Mr. DC and Maj SH do not deny that certain character letters were lost due to what Mr. DC describes as a "computer failure" at the Area Defense Counsel's office. As a result, the Defense worked to rebuild its sentencing evidence. According to Mr. DC, he explained to Appellant that the Defense could request a delay in order to obtain any letters he felt were missing. However, Appellant stated he was satisfied with the sentencing evidence and did not want a delay. Ultimately, in sentencing the Defense introduced favorable live testimony from Appellant's spouse and three military witnesses, three character letters, a letter of appreciation, two civilian awards, and a number of photos in addition to Appellant's oral and written unsworn statements.

The details and causes of the loss of the original character letters is unclear. However, once again we need not determine whether trial defense counsel's performance was deficient because Appellant cannot demonstrate prejudice. *See Tippit*, 65 M.J. at 76 (citation omitted). Appellant has made no showing of the content of the missing character letters; therefore, he cannot show how they would have differed from or materially enhanced the Defense's sentencing case. *Cf. United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) ("[A]ppellant has not even established a foundation for his claim [of ineffective assistance of counsel] by demonstrating that specific individuals would have provided the court with specific testimony.") Accordingly, he has failed to demonstrate a reasonable probability of a more favorable result.

### c. Failure to Object to Prosecution Exhibits

Appellant next contends trial defense counsel were ineffective by failing to object to Prosecution Exhibits 10 through 13, which were printed records of his communications with "queen [H]," "k," "BleachBuddie14," and "[J]," admitted

as Mil. R. Evid. 414 and Mil. R. Evid. 404(b) evidence as described above. We are not persuaded. It is true that trial defense counsel declined to object when the Government offered these exhibits without laying a foundation or authenticating the exhibits. However, as Mr. DC indicates, there is no reason to believe the Government could not have laid such a foundation if required, and the military judge had already ruled the substance of the Mil. R. Evid. 414 and Mil. R. Evid. 404(b) evidence was admissible.

Appellant contends the Defense could have also objected to the statements these unknown individuals made to Appellant on hearsay grounds. Again, we disagree. The significance of these statements was not the truth of the matter asserted; it was the effect on the recipient, Appellant. *See* Mil. R. Evid. 801(c) ("hearsay" is an out-of-court statement "a party offers in evidence to prove the truth of the matter asserted"). We find Appellant has failed to demonstrate either deficient performance or prejudice with respect to Prosecution Exhibits 10 through 13.

### d. Failure to Object to Improper Argument

Finally, Appellant argues trial defense counsel were deficient in failing to object to the various allegedly improper trial counsel arguments, as described above. Mr. DC responds that based on the draft instructions the military judge prepared, he "believed the judge understood how the evidence was to be considered and therefore did not require additional objections from defense counsel." As we have explained above, the military judge is presumed to know the law and to filter out improper evidence and arguments. *See Robbins*, 52 M.J. at 457. Because we have already determined Appellant was not prejudiced by these arguments in this judge-alone trial, it follows that he was also not prejudiced by trial defense counsel's failure to object.

## D. Post-Trial Delay

"We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *Id*. (citing *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004); *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003)).

Appellant's court-martial concluded on 18 April 2018. However, the convening authority did not take action until 11 September 2018. This 146-day period exceeded by 26 days the 120-day threshold for a presumptively unreasonable post-trial delay that the CAAF established in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Accordingly, we have considered the four factors the CAAF identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id*. at 135 (citing *United*

*States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)). However, where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Appellant does not claim he suffered any particular prejudice from the delay. Based on the court reporter's chronology, it appears the primary reason for the delay was the court reporter's workload. Appellant's record of trial was substantial, but not unusually large, amounting to six total volumes including 492 pages of transcript. After recording Appellant's trial, the court reporter transcribed and recorded other proceedings such that more than two months had elapsed before he could dedicate more than one day to transcribing Appellant's trial. It appears the Government sought to mitigate this delay to some extent by referring a portion of Appellant's trial to be transcribed by another court reporter. It also appears that once the court reporter was able to focus on Appellant's record, he was able to transcribe the bulk of it between 25 June 2018 and 6 July 2018. The military judge signed the final authentication on 20 July 2018, although the SJAR was not signed and served on the Defense until 6 August 2018. Another significant factor in the delay was defense counsel's request for an extension of 20 days in which to file Appellant's clemency matters, which the acting staff judge advocate granted. On the whole, if the processing of Appellant's case was less than excellent, we nevertheless do not find the delay so egregious as to adversely affect the perceived fairness and integrity of the military justice system. *See Toohey*, 63 M.J. at 362.

Appellant contends that even if he did not suffer a violation of due process rights under *Moreno*, this court should exercise its authority under Article 66, UCMJ, to grant relief for unreasonable and unexplained post-trial delay even in the absence of prejudice. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude that such an exercise of our authority is not warranted in this case.

### III. Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[7]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[7] We note an error in the promulgating order, in which the phrase "recution to the Grade of E-1" should read "reduction to the Grade of E-1." We direct this error be corrected in a new court-martial order.