# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40237**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jeremy J. STRADTMANN**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 May 2023

———————————

*Military Judge:* Jefferson B. Brown (arraignment); Jennifer J. Raab (motions); Bryon T. Gleisner; Charles G. Warren (entry of judgment).

*Sentence:* Sentence adjudged on 18 June 2021 by GCM convened at Peterson Air Force Base, Colorado. Sentence entered by military judge on 13 October 2021: Bad-conduct discharge, confinement for 54 months, and reduction to E-4.

*For Appellant:* Major Alexandra K. Fleszar, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major John P. Patera, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge ANNEXSTAD and Judge GRUEN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

The military judge found Appellant guilty, in accordance with his pleas, of three specifications of simple assault, one specification of assault consummated by a battery on divers occasions, three specifications of wrongfully communicating threats, and three specifications of child endangerment, in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 934.[1] Contrary to Appellant's pleas, the military judge sitting as a general court-martial found Appellant guilty of two specifications of simple assault, three specifications of assault consummated by a battery, and one specification of assault consummated by a battery on a child under the age of 16 years, in violation of Article 128, UCMJ.[2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 54 months, and reduction to the grade of E-4.

Appellant raises five issues on appeal: (1) whether the military judge erred by excluding relevant character evidence regarding one of the victims, AS; (2) whether the military judge's finding that Appellant was guilty of a lesser included offense of simple assault with a loaded firearm is factually insufficient; (3) whether Appellant's conviction for Specification 8 of Charge I (assault consummated by a battery) is legally and factually insufficient; (4) whether Specifications 6, 7, and 8 of Charge II (child endangerment) fail to state an offense such that the military judge abused his discretion by accepting Appellant's guilty pleas; and (5) whether Appellant is entitled to relief for the conditions of his post-trial confinement.[3,4] We have carefully considered issue (4) and find it

---

[1] All references to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise indicated, all other references to the UCMJ, the Rules for Courts-Martial (R.C.M.), and the Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The military judge found Appellant not guilty of three specifications of assault consummated by a battery, two specifications of aggravated assault with a dangerous weapon, one specification of wrongfully communicating a threat, and one specification of indecent conduct in violation of Articles 128 and 134, UCMJ. The two specifications of simple assault of which the military judge found Appellant guilty contrary to his pleas were lesser included offenses of the two specifications of aggravated assault with a dangerous weapon.

[3] Appellant personally raises issue (5) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] Although not raised by Appellant, we note that more than 150 days elapsed between the date Appellant was sentenced and the date his record of trial was docketed with this court. This period constitutes a facially unreasonable post-trial delay. *See United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020); *see also United States v.*

requires neither discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We find Appellant is entitled to relief with respect to issue (2) and take corrective action in our decretal paragraph.

## I. BACKGROUND

Appellant and AS were married in October 2014. The following month, they moved to Colorado Springs, Colorado, where Appellant was assigned to Peterson Air Force Base. Appellant and AS had two children together: a daughter, MS, born in 2015; and a son, ES, born in 2017.

As reflected in Appellant's guilty pleas, AS's testimony, and the military judge's findings, Appellant committed a series of offenses against AS and MS between October 2015 and February 2019. During this time frame Appellant assaulted AS on various occasions in the following ways: struck her on the arm with a roll of wrapping paper; hit her on her body with his hand on divers occasions; approached her in a threatening manner on two occasions; struck her on her body and foot with his hand and foot; pointed a firearm at her; pulled her up a set of stairs by her hair and struck her in the head with his hand; and threw a wallet at her. In addition, Appellant wrongfully communicated threats to inflict physical violence on AS on three separate occasions. Appellant also committed assaults against MS by striking her buttocks and back with his hand and by pointing a firearm at her, and he committed child endangerment by culpable negligence against MS on three occasions by either assaulting or threatening AS in the presence of MS.

Throughout this period, AS did not report these offenses to Appellant's chain of command or law enforcement. She did disclose some of the abuse to Appellant's mother, who instructed her not to report the offenses. AS also eventually described some of Appellant's abuse to two of her friends.

---

*Moreno*, 63 M.J. 129, 135–42 (C.A.A.F. 2006) (citations omitted) (addressing a convicted servicemember's due process right to timely post-trial and appellate review). Appellant has asserted no prejudice from the delay, and we perceive none. Accordingly, having considered the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and finding the delay is not so egregious as to be detrimental to the public's perception of the fairness and integrity of the military justice system, we find no violation of Appellant's due process rights. *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006); *Moreno*, 63 M.J. at 135 (citations omitted). Additionally, recognizing our authority to grant relief for excessive post-trial delay in the absence of a due process violation, we conclude no such relief is warranted. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002); *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

In March 2019, Appellant filed for divorce from AS and sought full custody of the two children. The same month, AS reported Appellant's offenses to security forces. AS provided investigators with photographs of certain marks and injuries on her body and videorecordings of Appellant threatening her, which she had created over the preceding years. AS filed for a protective order against Appellant in April 2019. The divorce became final in June 2020; however, civil court proceedings regarding child custody and financial matters continued through Appellant's June 2021 court-martial and beyond.

## II. DISCUSSION

### A. Exclusion of Character Evidence

#### 1. Additional Background

Before trial, the Defense provided the Government notice of its intent to introduce evidence of certain character traits of the victim, AS, including her alleged character for dishonesty, exaggeration, manipulation, and antagonism. The Government did not seek to preempt evidence of character for dishonesty, but moved to exclude evidence of AS's purported character for exaggeration, manipulation, and antagonism. The Government contended that character for exaggeration was simply a "nuanced" form of character for untruthfulness "repackaged under another name," and should be excluded as cumulative, time-wasting, and potentially confusing. The Government argued evidence of a character trait of manipulativeness was not relevant to the question of whether Appellant had committed the charged offenses, and did not constitute evidence of bias, prejudice, or motive. With regard to antagonism, the Government contended the alleged character trait was irrelevant for findings, distracting, and unfairly prejudicial. The Defense opposed the motion and contended evidence of all four alleged character traits should be permitted in findings.

After conducting a hearing, the military judge[5] issued a written ruling granting the Government's motion. With regard to evidence of character for exaggeration, the military judge found "[w]hether [AS] is prone to exaggerating is not a generalized description of her disposition with respect to a generally recognized trait such as truthfulness or peacefulness." Furthermore, the military judge was "not persuaded that this evidence is relevant to the allegations regarding whether [Appellant] used excessive force in exercising parental discipline or whether [AS] was reasonably placed in apprehension with respect to the offer type assaults." Additionally, the military judge further concluded the probative value of such evidence, even if it were relevant, was "substantially

---

[5] Judge Raab.

outweighed by the danger of unfair prejudice, confusion of the issues, and cumulative evidence of character for untruthfulness or dishonesty."[6]

With regard to evidence of character for manipulation, the military judge similarly found such evidence was not relevant to whether Appellant committed the alleged acts, nor did it "fall within a generalized description of her disposition with respect to a generally recognized trait." Moreover, assuming such evidence had relevance, its probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues.

The military judge found evidence of AS's alleged character for antagonism was not relevant, noting Appellant was not raising self-defense or any other affirmative defense. She found such alleged character evidence was "not directed to the issues or matters in dispute, and [did] not legitimately tend to prove [or disprove] the allegations." Furthermore, even if relevant, the probative value of such evidence was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the court members.

The military judge advised she would "consider any requests for reconsideration supported with additional evidence or argument if timely raised." The Defense did not seek such reconsideration.

### 2. Law

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (citation omitted). "A military judge abuses [her] discretion when: (1) the findings of fact upon which [she] predicates [her] ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if [her] application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citation omitted). "For [a] ruling to be an abuse of discretion, it must be 'more than a mere difference of opinion'; rather, it must be 'arbitrary, fanciful, clearly unreasonable' or 'clearly erroneous.'" *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (additional citations omitted)).

In general, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Mil. R. Evid. 404(a)(1). However, "the accused may offer evidence of an alleged victim's pertinent trait . . . ." Mil. R. Evid. 404(a)(2)(B). In addition, Mil. R. Evid. 608(a) permits a witness's credibility to be attacked or supported by testimony regarding the witness's character for

---

[6] At this point, Appellant had not yet elected whether to be tried by court members or by the military judge alone.

truthfulness. When admissible, character or a character trait "may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Mil. R. Evid. 405(a); *see also* Mil. R. Evid. 608(a) (permitting reputation or opinion testimony regarding a witness's character for truthfulness).

"Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as[ ] honesty, temperance or peacefulness." *United States v. Dimberio*, 56 M.J. 20, 24–25 (C.A.A.F. 2001) (quoting *McCormick on Evidence* § 195 at 686 (5th ed. 1999)). A "pertinent" character trait is one that is relevant. *United States v. Clemons*, 16 M.J. 44, 47 (C.M.A. 1983). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence to determining the action." Mil. R. Evid. 401.

The military judge may exclude relevant evidence that is otherwise admissible if its probative value is substantially outweighed by a countervailing concern, including *inter alia* unfair prejudice, confusion of the issues, misleading the members, undue delay, or needlessly presenting cumulative evidence. Mil. R. Evid. 403. "A military judge enjoys 'wide discretion' in applying Mil. R. Evid. 403." *United States v. Harris*, 46 M.J. 221, 225 (C.A.A.F. 1997) (citation omitted). "Where a military judge properly conducts the balancing test under [Mil. R. Evid.] 403, we will not overturn [her] decision unless there is a clear abuse of discretion." *Ediger*, 68 M.J. at 248 (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)). Where the military judge "does not sufficiently articulate [her] balancing on the record," her ruling receives less deference. *Id.* (quoting *United States v. Berry*, 61 M.J. 91, 96 (C.A.A.F. 2005)).

### 3. Analysis

Appellant contends the military judge abused her discretion by excluding evidence of AS's character for exaggeration, manipulation, and antagonism. We disagree.

The military judge did not abuse her discretion by concluding a tendency to exaggerate was, in the circumstances of Appellant's case, not an independent pertinent character trait. Whether a witness exaggerates events or invents them entirely, such evidence reasonably implicates a character for truthfulness or untruthfulness, which the Defense was permitted to introduce without objection. Moreover, we find the military judge did not clearly abuse her discretion with regard to her Mil. R. Evid. 403 ruling; her conclusion that whatever slight probative value a character specifically for exaggeration had was substantially outweighed by cumulativeness and the danger of confusing the court members was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous.

With regard to manipulation, for purposes of our analysis we assume without deciding that in some cases a character for manipulation could be a pertinent character trait. Nevertheless, the military judge's conclusion that such a character trait was not relevant in the instant case was not clearly unreasonable. The Defense sought to introduce such evidence in findings, but "manipulation" was not a defense to the charged offenses—whatever his motives, Appellant either committed the charged acts with the requisite mens rea or he did not. Because such character evidence lacked relevance in this case, we further find the military judge's conclusion that the probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues was not clearly unreasonable.

Appellant contends AS's alleged character for manipulation was specifically relevant to the Defense's theory that AS was manipulating the judicial system against Appellant for her benefit. However, the military judge could reasonably conclude that a character for "manipulation" had no relevance independent of her alleged character for untruthfulness. Whatever AS's motives for reporting Appellant's offenses and participating in his court-martial, at trial the relevant question was whether her testimony was truthful. Importantly, the military judge's ruling on character evidence did not foreclose the Defense from developing evidence and arguing that AS had a significant *bias* and *motive* regarding the outcome of the court-martial, particularly in light of the ongoing civil court proceedings.

As for AS's alleged character for antagonism, we note such evidence could be relevant in some cases. For example, evidence that the alleged victim of an assault had an antagonistic character might be relevant where the accused contends he acted in self-defense. However, as the military judge noted, Appellant raised no such affirmative defenses in this case. In the absence of such a claim, the military judge could reasonably conclude that evidence AS had an antagonistic character was not relevant to whether Appellant committed the charged offenses. In addition, it was not clearly unreasonable for the military judge to conclude introducing such evidence created a danger of unfair prejudice, confusion of the issues, and misleading the court members that substantially outweighed any probative value in this case.

We note the military judge's rulings on character evidence did not hobble Appellant's case at trial. Appellant was permitted to introduce evidence of AS's character for untruthfulness, and at trial the subsequent military judge also allowed one defense witness to testify to AS's character for "assertiveness." Moreover, trial defense counsel were free to develop evidence of AS's bias and specific motives as a witness in light of her interest in the outcome of the ongoing civil domestic court proceedings, and to make arguments accordingly.

**B. Lesser Included Offense—Simple Assault with a Loaded Firearm**

### 1. Additional Background

Specification 9 of Charge I alleged Appellant "did, at or near Colorado Springs, Colorado, between on or about 20 December 2014 and on or about 31 December 2017, on divers occasions, commit an assault upon [AS] by pointing a dangerous weapon at her, to wit: a loaded firearm."

Specification 10 of Charge I alleged Appellant "did, at or near Colorado Springs, Colorado, between on or about 1 February 2017 and on or about 30 April 2017, commit an assault upon [MS], a child under the age of 16 years, by pointing a dangerous weapon at her, to wit: a loaded firearm."

At trial, AS testified Appellant kept a handgun in their bedroom, which he kept loaded until MS was approximately two-and-a-half years old. AS testified regarding an occasion sometime between November 2014 and June 2015 when she and Appellant were upstairs near their bedroom. AS started to go downstairs when Appellant retrieved the handgun from the bedroom and she heard him "chamber[ ] a round." AS believed Appellant pointed the gun at her back, but did not turn around to see Appellant doing so before she walked away and Appellant returned to the bedroom.

AS testified to a second incident that occurred in approximately March 2017. AS was pregnant with ES at the time, and Appellant was angry after learning the child would be a boy. AS was sitting on the bed in their bedroom with MS on her lap when Appellant entered and retrieved the handgun from a bedside table. According to AS, Appellant chambered a round and then pointed the weapon at AS and MS. After a few seconds, Appellant returned the handgun to the table and left the room.

At trial, the Defense contested whether the 2017 incident happened at all and, assuming it did, whether AS would have been able to tell the handgun was loaded. After both sides rested, the military judge and counsel discussed the applicability of a lesser included offense of simple assault for both Specifications 9 and 10 of Charge I. Trial counsel initially proposed finding the lesser included offense would involve excepting the words "dangerous" and "loaded" from each specification. Trial defense counsel contended that such a finding would not be legally sufficient to constitute assault with an "unloaded" firearm, authorizing an increased maximum punishment, unless the military judge also substituted the word "unloaded" in place of the excepted word "loaded." *See Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶ 54.e.(1)(B). Trial defense counsel argued such a substitution would disqualify the offense as a lesser included offense, because the term "unloaded" was not included in the original specifications. Ultimately, trial defense counsel did not object to the military judge's consideration of a lesser included offense of simple assault, "not simple assault with an unloaded firearm," with the understanding that the alleged assault was nevertheless committed by pointing a firearm.

With respect to Specification 9 of Charge I, the military judge found Appellant not guilty of aggravated assault, but guilty of simple assault with exceptions and substitutions. Specifically, the military judge excepted the words "on divers occasions" and modified the date range to be between on or about 1 February 2017 and on or about 30 April 2017; he did not except the words "dangerous" or "loaded." With respect to Specification 10 of Charge I, the military judge found Appellant not guilty of aggravated assault, but guilty of the lesser included offense of simple assault without exceptions and substitutions. Thus, according to the military judge's findings, he found Appellant guilty of simple assault against both AS and MS by "pointing a dangerous weapon at [them], to wit: a loaded firearm."

### 2. Law

We review issues of factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (second alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

The elements of aggravated assault under Article 128, UCMJ, as charged in this case included: (1) that the accused attempted or offered to do bodily harm to a certain person; (2) that the accused did so with a certain means, to wit: by pointing a loaded firearm; (3) that the attempt or offer was done with unlawful force or violence; (4) that the weapon, means, or force was used in a manner likely to produce death or grievous bodily harm; and, with respect to Specification 10 of Charge I, (5) that the person was a child under the age of 16 years. 10 U.S.C. § 928(b)(1); *see* 2016 *MCM*, pt. IV, ¶ 54.b.(4)(a).

The elements of simple assault under Article 128, UCMJ, include: (1) that the accused attempted to do or offered to do bodily harm to a certain person; (2) that the attempt or offer was done unlawfully; (3) and that the attempt or offer was done with force or violence. 10 U.S.C. § 928(a); *see* 2016 *MCM*, pt. IV, ¶ 54.b.(1).

### 3. Analysis

Appellant contends the military judge's finding with respect to Specifications 9 and 10 of Charge I that he is guilty of simple assault with a "loaded firearm" is factually insufficient. Accordingly, Appellant asks this court to set aside the words "dangerous" and "loaded" in both specifications. The Government contends that any modification is unnecessary because the military judge found Appellant guilty only of simple assault, not simple assault with either a

loaded or an unloaded weapon. Therefore, the Government reasons, whether the gun was loaded or unloaded was irrelevant to the conviction, so long as the military judge found Appellant pointed the firearm at AS and MS.

We agree with Appellant that the military judge's findings with respect to Specifications 9 and 10 of Charge I should be modified, although not as a matter of factual sufficiency per se. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1), enjoins this court to "affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as the Court finds correct in law and fact *and* determines, on the basis of the entire record, *should* be approved." (Emphasis added.) Our superior court has long held this language provides this court broad authority to grant relief to an appellant to correct a legal error. *See, e.g.*, *United States v. Parker*, 36 M.J. 269, 271 (C.M.A. 1993) (noting the service appellate courts "are something like the proverbial 800-pound gorilla when it comes to their ability to protect an accused"); *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991) (explaining Article 66(c), UCMJ, 10 U.S.C. § 866(c), conferred on the service appellate courts "*carte blanche* to do justice"). Without delving into the evidence of the contested issue of whether the Government proved beyond a reasonable doubt the handgun was loaded, we find the words "dangerous" and "loaded" should be set aside and not approved in light of the military judge's conclusion Appellant was guilty only of the lesser included offense of simple assault. *Cf.* 2019 *MCM*, pt. IV, ¶ 3.b.(6) ("The court-martial may except (that is, delete) the words in the specification that pertain to the offense charged and, if necessary, substitute language appropriate to the lesser included offense."). Leaving the specifications unmodified would suggest the military judge found Appellant guilty of using a dangerous weapon, specifically a loaded firearm, which would also make him guilty of an aggravated assault—and that was evidently not the military judge's intent. We take corrective action in our decretal paragraph.

Having modified the findings, we have considered whether we may reliably reassess Appellant's sentence in light of the factors identified in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). We conclude that we can. Not only do we find that all four *Winckelmann* factors favor reassessment; we further note the record is clear the military judge intended to sentence Appellant only for simple assault without the aggravating factor that it was committed with an unloaded firearm, and that Appellant requests no sentence relief in relation to this assignment of error. Accordingly, we find sentence reassessment is appropriate, and that the military judge would have adjudged the same sentence regardless of our modification to the findings with respect to Specifications 9 and 10 of Charge I.

## C. Legal and Factual Sufficiency of Specification 8 of Charge I

### 1. Additional Background

During her testimony, AS described an incident in December 2018 when Appellant became angry at her because she had offered to bring food to a Christmas Eve dinner party. Appellant walked over to where AS was sitting and "started punching all around [her] body where [she] was sitting in the chair." The following colloquy ensued:

> Q. [Circuit Trial Counsel] And did he, in fact, hit you or just the chair?
>
> A. [AS] Um -- I was very very still. He was like all around my body. I think he did make contact but it wasn't like super -- I mean, I was kind of used to it. I -- I just stayed really still. Most of it was on the chair.
>
> Q. And after he punched the chair and a little bit on you, what happened?
>
> A. Um -- he turned back and he started to walk away, and then he turned back.
>
> Q. What did he do when he turned back?
>
> A. He kicked me really hard.
>
> Q. Where did he kick you?
>
> A. Um -- he kicked my right foot with all -- it felt like all of his strength.
>
> Q. How did it feel when he kicked your foot?
>
> A. Uh -- it was -- it was like brutal pain. . . .
>
> Q. How long did your foot hurt?
>
> A. Um -- I was limping the next day. I wasn't able to go to his work Christmas party, and it was probably a couple of weeks before it healed up.

The Government introduced a copy of a digital photograph dated 17 December 2018 that AS testified depicted a bruise on the side of her right foot that resulted from this kick. GB, a security forces investigator, verified the date of the photograph from the metadata associated with the original, digital version of the photograph.

SS was a friend of AS; SS's husband worked in the same office as Appellant. SS testified that AS told her about a time that Appellant injured AS's foot. SS "guess[ed]" her conversation with AS took place in August or September of 2017; she "believe[d]" the incident AS described occurred while AS was preg-

nant with ES, who was born in 2017. AS told her Appellant became angry during a conversation, walked to where AS was sitting on a reclining chair, and pushed it back so AS was reclined. Appellant then

> hovered over [AS], and yell[ed] at her, and just started punching with his fists all around her -- her head and torso[,] punching the chair, not her. But punching around her. And then at some point stopped and stood up, and yelled something else at her and then kicked her really hard in her left foot.

On redirect examination, SS testified she recalled an occasion when AS "missed a work Christmas party that she was supposed to show up to."

### 2. Law

We review issues of legal and factual sufficiency de novo. *Washington*, 57 M.J. at 399 (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *Rodela*, 82 M.J. at 525 (citation omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Thus, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (second alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

In order to convict Appellant of assault consummated by a battery as alleged in Specification 8 of Charge I, the Government was required to prove: (1)

at or near Colorado Springs, between on or about 1 December 2018 and on or about 31 December 2018, Appellant did bodily harm to AS by striking her on her body and foot with his hand and foot; and (2) the bodily harm was done with unlawful force or violence. 10 U.S.C. § 928(a); 2016 *MCM*, pt. IV, ¶ 54.b.(2).

### 3. Analysis

The military judge found Appellant guilty of Specification 8 of Charge I as charged. Appellant contends this finding is both legally and factually insufficient. We disagree.

AS's testimony supports the elements of the offense. Although AS testified Appellant mostly struck the chair she was sitting in with his fists, her testimony also indicates Appellant made contact with AS's body with his fists. In addition, AS testified Appellant kicked her foot very hard, which resulted in her being unable to attend a holiday party at Appellant's workplace. AS testified this incident occurred in December 2018. The military judge, as a rational trier of fact, could reasonably find Appellant committed the charged offense beyond a reasonable doubt.

Appellant contends that discrepancies between AS's testimony and SS's testimony, offered as a prior consistent statement, indicate AS's testimony is not reliable. Appellant notes SS places this conversation in approximately August or September 2017, before the offense was alleged to have occurred; in addition, SS recalled AS said Appellant had kicked AS's left foot rather than her right foot. Appellant couples these discrepancies with the testimony of three witnesses who testified to their opinion that AS had a character for untruthfulness, as well as AS's motive to fabricate allegations against Appellant in the context of their subsequent divorce and child custody dispute.

Nevertheless, the military judge could reasonably credit AS's testimony in spite of these factors. SS's testimony that AS told her about the incident long before Appellant and AS separated and AS reported Appellant's misconduct to law enforcement reinforces AS's account in a general sense. AS, as the victim of the alleged assault, would presumably know the timing and details of the event better than SS. The photograph introduced by the Government clearly depicts a right foot rather than a left foot, and the investigator verified the data of the photograph from December 2018. Appellant suggests the photograph could have been taken in December 2018, and then AS shaped her testimony to match this evidence; however, the military judge evidently discounted this theory. The military judge could reasonably conclude SS was mistaken as to when the conversation and assault occurred, and which foot AS said Appellant had kicked. Furthermore, the military judge could reasonably discount the character evidence offered by AS's estranged adult son, the son's father with

whom the son lived, and AS's sister who acknowledged the existence of an unresolved "dispute" between herself and AS since 2016.

Drawing every reasonable inference from the evidence of record in favor of the Government, we conclude the evidence was legally sufficient to support Appellant's conviction of Specification 8 of Charge I. Additionally, having weighed the evidence in the record of trial, and having made allowances for the fact that the military judge personally observed the witnesses and we did not, we also find the evidence factually sufficient.

## D. Post-Trial Confinement Conditions

### 1. Additional Background

On 18 June 2021, Appellant was sentenced and began his 54-month term of confinement, pursuant to which he was confined at the Naval Consolidated Brig (NCB) in Charleston, South Carolina. On 28 June 2021, trial defense counsel submitted a "Request for Clemency" memorandum to the convening authority in accordance with Rule for Courts-Martial 1106(d)(1). Trial defense counsel requested the convening authority disapprove the adjudged bad-conduct discharge[7] and waive automatic forfeitures for the benefit of Appellant's dependent children. *See* 10 U.S.C. § 858b(b). The memorandum emphasized positive aspects of Appellant's duty performance and the negative financial impact of the sentence on himself and his dependents; it did not comment on the conditions of Appellant's post-trial confinement.

On appeal, Appellant moved to attach to the record a declaration by Appellant dated 14 February 2023 with several attachments. Therein he described a number of "issues" he experienced during his post-trial confinement. In the same motion, Appellant moved to attach two other declarations: one dated 16 February 2023 from the attorney who represented Appellant in his civilian court proceedings during his confinement, and one dated 14 February 2023 from an Air Force defense counsel who in late August 2022 was assigned to assist Appellant in filing an Article 138, UCMJ, 10 U.S.C. § 938, complaint against the NCB. This court granted the motion to attach.

In response, the Government moved to attach a declaration from the NCB legal officer dated 17 March 2023. This court also granted the Government's motion.

### 2. Law

---

[7] Trial defense counsel did not explain how the convening authority would have been authorized to disapprove the bad-conduct discharge. *See* R.C.M. 1109.

We review de novo whether an appellant has been subjected to impermissible conditions of confinement in violation of the Eighth Amendment[8] or Article 55, UCMJ, 10 U.S.C. § 855. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) (citations omitted), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938 [2000]."

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and second alteration in original) (footnotes omitted) (internal citations omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)).

In general, the Courts of Criminal Appeals (CCAs) "may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ." *United States v. Jessie*, 79 M.J. 437, 441 (C.A.A.F. 2020) (citation omitted). In *Jessie*, the United States Court of Appeals for the Armed Forces (CAAF) defined the "entire record" to include the "record of trial," "matters attached to the record" pursuant to the Rules for Courts-Martial (formerly known as "allied papers"), and "briefs and arguments that government and defense counsel (and the appellant personally) might present regarding matters in the record of trial and 'allied papers.'" *Id.* at 440–41 (citations omitted). Notably, the "entire record" thus defined does not include matters submitted by the parties to the CCAs for the first time on appeal. However, the CAAF identified two exceptions to this general rule. First, the CAAF acknowledged certain precedents had "allowed the CCAs to supplement the record . . . when necessary for resolving claims of ineffective assistance of trial defense counsel and a wide variety of other issues when those claims and issues are raised by the record but are not fully resolvable by the materials in the record." *Id.* at 442 (citations

---

[8] U.S. CONST. amend. VIII.

omitted). Second, other CAAF precedents have "allowed appellants to raise and present evidence of claims of cruel and unusual punishment and violations of Article 55, UCMJ, [10 U.S.C. § 855, or the Eighth Amendment,] even though there was nothing in the record regarding those claims." *Id.* at 444 (citations omitted).

### 3. Analysis

In his brief to this court, Appellant alleges the conditions of his confinement at the NCB violated his Eighth Amendment and Article 55, UCMJ, rights in three general ways: (1) by denying him access to his civilian attorneys and civil court proceedings; (2) by opening attorney-client privileged mail outside Appellant's presence; and (3) by failing to facilitate necessary medical care in a timely manner.[9] The Government contends Appellant has failed to demonstrate he has exhausted his administrative remedies, demonstrated a denial of necessities, or demonstrated the requisite culpable state of mind on the part of prison officials.

As an initial matter, we have considered whether a post-trial evidentiary hearing is required to resolve any discrepancies between the declarations submitted by Appellant and that submitted by the Government, and we conclude such a hearing is not required. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam). Even if we resolved any material discrepancies in Appellant's favor, he would not be entitled to relief. *See Ginn*, 47 M.J. at 248.

Turning to the substance of Appellant's claims, we first address his contentions regarding interference with his access to the civilian courts and his attorney, then turn to his medical claims.

### a. Access to Civilian Courts and Attorneys and Interference with Attorney-Client Privileged Communications

Appellant alleges NCB personnel were responsible for multiple delays in his ongoing divorce and child custody proceedings due to their inefficient and untimely communication and coordination with the civilian attorney representing Appellant in civil court. Appellant asserts these delays increased his attorney fees by at least $3,000.00. In addition, Appellant alleges NCB personnel improperly opened sealed attorney-client material his civilian counsel had mailed to him, and withheld (at least temporarily) several of the exhibits that had been sent. The declaration of the NCB legal officer disputes the claims that confinement personnel acted improperly.

---

[9] Appellant's declaration raises additional, relatively minor complaints which do not require discussion.

Although facially presented as a violation of Appellant's Eighth Amendment and Article 55, UCMJ, rights, the alleged NCB interference with Appellant's access to court and his attorney-client relationship do not amount to "denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Cases on which Appellant relies in his brief describe interference with an inmate's access to courts in terms of Fifth Amendment[10] and Fourteenth Amendment[11] due process and the First Amendment[12] right to petition for redress of grievances, rather than cruel and unusual punishment. *See, e.g.*, *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992); *Jackson v. Procunier*, 789 F.2d 307, 310–11 (5th Cir. 1986). Similarly, an inmate's right to receive mail, to be "applied in light of the special characteristics of the . . . environment," is protected by the First Amendment. *Procunier v. Martinez*, 416 U.S. 396, 409–10 (1974) (quoting *Tinker v. Des Moines School District*, 393 U.S. 503, 506 (1969)).

To the extent Appellant asserts the NCB's alleged interference in accessing civil courts and communicating with his civilian attorney are indeed Eighth Amendment and Article 55, UCMJ, violations, his claim fails because these difficulties do not amount to a denial of life's necessities. To the extent these allegations implicate other constitutional rights, our consideration of them is barred by the CAAF's decision in *Jessie*. These matters are not raised in Appellant's clemency submission to the convening authority, nor anywhere else in the "entire record" as the CAAF has defined it. *See Jessie*, 79 M.J. at 440–41. Therefore, these non-Eighth Amendment constitutional claims fall under the general rule that a CCA may not consider matters outside the entire record when reviewing a sentence pursuant to Article 66, UCMJ. *See id.* at 441.

Of course, this conclusion is not to deny the existence or importance of such constitutional rights, nor to deny that a CCA has a duty to consider alleged constitutional violations other than cruel and unusual punishment that may unlawfully increase a punishment—where such matters are raised by the "entire record" and therefore fall within the scope of our Article 66, UCMJ, review. *See United States v. Guinn*, 81 M.J. 195, 201 (C.A.A.F. 2021).[13] However, under

---

[10] U.S. CONST. amend. V.

[11] U.S. CONST. amend. XIV.

[12] U.S. CONST. amend. I.

[13] In *Jessie*, the CAAF found the CCA properly declined to consider the appellant's First Amendment and Fifth Amendment claims regarding deprivation of contact with his biological children because the "entire record" contained no information regarding the policy in question. 79 M.J. at 444. In contrast, in *Guinn* the appellant complained

our superior court's precedent, in Appellant's case this court is not the proper forum for him to seek redress for such alleged violations.

### b. Medical Care

In contrast to Appellant's claims regarding interference with his access to courts and communication with his civilian attorney, "[d]enial of adequate medical attention can constitute an Eighth Amendment or Article 55[, UCMJ] violation." *White*, 54 M.J. at 474 (citing *United States v. Sanchez*, 53 M.J. 393, 396 (C.A.A.F. 2000)). Accordingly, we may consider the declarations and attachments the parties have submitted to this court with respect to Appellant's allegedly deficient medical care at the NCB. *See Jessie*, 79 M.J. at 444. The standard is "reasonable" medical care rather than "perfect" or "optimal" care. *Id.* at 475 (citation omitted).

Appellant's declaration describes the following sequence of events: in August 2021, Appellant discovered blood in his stool, which continued for several months. Appellant attended sick call one time in August 2021 and once again in September 2021, where he reported this condition to a medical corpsman. Appellant was told a "kit" would be ordered so that he could provide an "analysis sample;" however, such a kit was not provided. Appellant states he stopped going "to medical because they were only able to give [him] Prilosec, which did not work to stop the bleeding." In March 2022, Appellant filed a "Prisoner Request" to the NCB commanding officer (CO) in which, among other complaints, he described his ongoing condition and questioned why this situation had not been elevated to the CO's level until the preceding month, February 2022. In May 2022, Appellant received medical treatment for an apparently unrelated condition which resulted in the cause of the bleeding also being diagnosed. In October 2022, Appellant received surgery for ruptured hemorrhoids and polyps which apparently resolved the issue. Other than the bleeding itself, Appellant did not describe any other disabilities or symptoms associated with this condition. The declaration from the NCB legal officer did not challenge the substance of Appellant's declaration in this regard, but stated Appellant was never denied medical care and received adequate care "using the medical protocols established by this facility."

Although the available evidence indicates Appellant's care was far from "optimal," we are not persuaded he has demonstrated he was denied the necessities of life. Appellant was evidently able to attend sick call and report his condition when he wanted to. He elected to stop going to "medical" because he found their treatment ineffective; however, Appellant has not demonstrated

---

about a similar policy in his clemency submissions to the convening authority, which were included in the entire record. *United States v. Guinn*, ARMY 20170500, 2021 CCA LEXIS 423, at *3 (A. Ct. Crim. App. 20 Aug. 2021) (unpub. op.).

his lingering condition had a materially adverse effect on his daily life. Appellant's condition was eventually diagnosed and treated through surgery. Although we do not applaud the level of care he received, we are not persuaded his situation amounted to cruel and unusual punishment.

In addition, we are not persuaded Appellant exhausted his administrative remedies with respect to his medical care. Although Appellant provided evidence that he eventually submitted an Article 138, UCMJ, complaint regarding interference with his access to the courts and communication with his attorney, evidently at no point did he submit an Article 138, UCMJ, complaint regarding his medical care. Accordingly, Appellant has also failed to satisfy the third prong of the *Lovett* test.

## III. CONCLUSION

The words "dangerous" and "loaded" are excepted from Specification 9 and Specification 10 of Charge I and the excepted words are **SET ASIDE**. We reassess the sentence to a bad-conduct discharge, confinement for 54 months, and reduction to the grade of E-4. The findings, as modified, and the sentence, as reassessed, are correct in law and fact, and no additional error materially prejudicial to Appellant's substantial rights occurred.[14] Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). The findings, as modified, and the sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[14] We note that three photographs of MS were attached to the written victim unsworn statement presented during presentencing proceedings by AS, as MS's designated representative. The CAAF has held that photographs are neither oral nor written statements, and therefore are not admissible pursuant to R.C.M. 1001A(e). *United States v. Edwards*, 82 M.J. 239, 244 (C.A.A.F. 2022). Trial defense counsel did not object, and Appellant has not raised the matter on appeal. Assuming *arguendo* the admission of these photographs was clear or obvious error, we find no material prejudice to Appellant's substantial rights. The three photographs merely depict MS at play and are in no way inflammatory. Moreover, the military judge was already familiar with MS's appearance from photographs and video recordings admitted at trial.